[No. B233733. Second Dist., Div. Six. July 2, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
JESSE MICHAEL BAKER-RILEY, Defendant and Appellant.

632

## COUNSEL

Matthew Alger, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**YEGAN, J.**—Jesse Michael Baker-Riley appeals from the judgment entered after his conviction by a jury of first degree murder (Pen. Code, §§ 187, subd. (a), 189),[1] first degree residential burglary (§§ 459, 460, subd. (a)), and two counts of first degree residential robbery (§§ 211, 212.5, subd. (a)). The jury found true firearm enhancements within the meaning of sections 12022.53, subdivision (b), and 12022.5, subdivision (a). Appellant was sentenced to prison for 35 years to life.

The murder conviction was based on the provocative act murder doctrine. Appellant contends that the trial court erroneously instructed the jury on how to determine the degree of murder. Appellant also contends that the evidence is insufficient to support the murder conviction because his provocative acts did not go beyond what was necessary to commit the underlying crime of robbery. We affirm.

### Facts

Peter Davis was at home with a friend, Dylan Baumann, when he heard a knock on the front door. Davis opened the door. Appellant and his cohort, the murder victim, Kelsea Alvarez, stood in the open doorway. Appellant pulled

---

[1] Unless otherwise stated, all statutory references are to the Penal Code.

out a gun from under his shirt, "put it in [Davis's] face," and said, "You're fucked." The gun was approximately one foot away from Davis. Appellant and Alvarez entered the residence. Appellant demanded cash and marijuana.

Baumann said that he was leaving. Appellant replied: "No, I'm a fucking thug, I'm not fucking around. . . . I'll fucking make you paralyzed for the rest of your fucking life. I'll shoot your fucking kneecaps." When appellant said this, the barrel of his gun was "very close" to Baumann's knees. Appellant waved the gun "around" and pointed it at Baumann's head. At this point, the gun was less than three or four feet away from Baumann.

When appellant and Alvarez entered the residence, Davis and Baumann were eating. Appellant "proceeded to grab [Baumann's] food and eat it." "[H]e was laughing and pointing his gun at [Baumann's] head and eating [Baumann's] food." He asked Baumann if he had ever seen the movie, Pulp Fiction. Baumann said he had not seen the movie. Appellant again started to laugh.

Appellant pointed his gun at Davis, ate some of Davis's food, and ordered him to open a fortune cookie. Appellant said, "Open that fucking cookie, . . . read that shit, . . . read it aloud." Davis opened the cookie and read the fortune. It said: "If opportunity comes, take it!" Appellant laughed and said he would take an opportunity.

Appellant pointed his gun at Davis and Baumann and ordered them to empty their pockets. They did as they were told. Appellant said, "I'll fucking kill. I'll fucking shoot you right now." Appellant was repeatedly "clicking his weapon, clicking the safety on and off." Baumann thought, "I can't believe I'm going to die and I haven't lived the life I want to fulfill."

Appellant then "said, 'Oh,' and he got all happy because he saw some cannabis drying on a string." The cannabis was in a back room. Appellant pointed his gun at Davis and ordered him to go into the room and sit on a bed. Davis sat on the bed and begged appellant not to kill him. Appellant did not respond to Davis's plea. Davis thought he was going to die.

Appellant turned around, and Davis grabbed his own handgun, which was "tucked in between the bed and the mattress." Davis stood up and fired four or five times at appellant. He missed appellant but one of the bullets penetrated the lungs of appellant's accomplice, Alvarez. He died from the wound. Appellant tried to fire back at Davis, but his gun jammed and would not fire.

## Provocative Act Murder Doctrine

■ In *People v. Gilbert* (1965) 63 Cal.2d 690 [47 Cal.Rptr. 909, 408 P.2d 365], "[t]he California Supreme Court . . . set forth the provocative act murder doctrine as the law of this state." [Citations.]"[2] (*People v. Briscoe* (2001) 92 Cal.App.4th 568, 595 [112 Cal.Rptr.2d 401].) Our Supreme Court declared: "When the defendant or his accomplice, with a conscious disregard for life, intentionally commits an act that is likely to cause death, and his victim or a police officer kills in reasonable response to such act, the defendant is guilty of murder." (*People v. Gilbert, supra,* 63 Cal.2d at p. 704.)

"The provocative act murder doctrine has traditionally been invoked in cases in which the perpetrator of the underlying crime instigates a gun battle, either by firing first or by otherwise engaging in severe, life-threatening, and usually gun-wielding conduct, and the police, or a victim of the underlying crime, responds with privileged lethal force by shooting back and killing the perpetrator's accomplice or an innocent bystander. [Citations.]" (*People v. Cervantes* (2001) 26 Cal.4th 860, 867 [111 Cal.Rptr.2d 148, 29 P.3d 225].)

## Instruction on Degree of Provocative Act Murder

Pursuant to CALCRIM No. 560, the trial court instructed the jury that, if it found appellant guilty of provocative act murder, the murder would be in the first degree if the People proved the following: "1. As a result of [appellant's] provocative act[,] Kelsea Alvarez was killed during the commission of robbery; AND 2. [Appellant] intended to commit robbery when he did the provocative act." Appellant contends that this instruction was erroneous because "the felony-murder rule is not properly invoked to determine the degree of a murder committed under the provocative act doctrine." Appellant argues that he could be found guilty of first degree murder only if he had "a deliberate, premeditated intent to kill" when he committed the provocative act.

■ We disagree. "In *People v. Gilbert*[, *supra,*] 63 Cal.2d 690 [47 Cal.Rptr. 909, 408 P.2d 365] . . . , [our Supreme Court] explained that provocative act implied malice murders are first degree murders when they occur during the course of a felony enumerated in section 189 that would support a first degree felony-murder conviction. [Citation.]" (*People v. Sanchez* (2001) 26 Cal.4th 834, 852 [111 Cal.Rptr.2d 129, 29 P.3d 209].) Section 189 provides: "All murder which is . . . committed in the perpetration of . . . robbery . . . is murder of the first degree." Accordingly, the trial court

---

[2] The judgment in *Gilbert* was vacated on other grounds in *Gilbert v. California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951].

correctly instructed the jury that, where the underlying felony is robbery, the felony-murder rule of section 189 applies in determining the degree of a provocative act murder. (See *Pizano v. Superior Court* (1978) 21 Cal.3d 128, 139–140, fn. 4 [145 Cal.Rptr. 524, 577 P.2d 659] ["The killing [of the robbery victim], having been committed by the policeman to thwart the robbery, cannot be said to have been committed in perpetration of it. *But the act which made the killing a murder attributable to the robber—[the* robber's] *initiating the gun battle* [with the policeman]—*was committed in the perpetration of the robbery.* Therefore, as *Gilbert* held, section 189 may properly be invoked to determine that the murder is of the first degree."].)

## Sufficiency of the Evidence

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Avila* (2009) 46 Cal.4th 680, 701 [94 Cal.Rptr.3d 699, 208 P.3d 634].)

■ Appellant contends that "the evidence is insufficient to support his conviction of murder under the provocative act doctrine because his alleged provocative acts did not exceed the acts inherent in the crime of robbery." Where, as here, "the underlying crime does not involve an intent to kill . . . [,] the mere participation in the underlying criminal offense is not sufficient to invoke the doctrine of provocative act murder. The provocative act must be something beyond that necessary to commit the underlying crime. [Citations.] In every robbery, the possibility exists that a victim will resist and kill. The robber has little control over such a killing once the robbery is undertaken. . . . However, circumstances set in motion by the defendant which are fraught with grave and inherent danger to life are sufficient to constitute a provocative act that allows a jury to raise an inference of malice. [Citation.]" (*People v. Briscoe, supra,* 92 Cal.App.4th at pp. 582–583.) Thus, "[o]ne who robs another while doing no more than holding a weapon may not have committed a provocative act, while a perpetrator who brandishes a deadly weapon, puts it to the head of a robbery victim, cocks the gun or pistol-whips the victim with it may have." (*Id.,* at pp. 589–590.)

In arguing that the evidence is insufficient, appellant relies on *In re Joe R.* (1980) 27 Cal.3d 496 [165 Cal.Rptr. 837, 612 P.2d 927]. There, the minor and an accomplice committed an armed robbery. The accomplice pointed a gun at the victim's head, and the minor threatened to kill him if he did not cooperate. After taking the victim's property, the accomplice ordered him to

walk toward an alley. The victim struggled with the accomplice, grabbed his gun, and shot him. The victim testified that he had decided to fight for the weapon because "he knew he would be 'executed' . . ." in the alley. (*Id.*, at p. 507.) Based on the provocative act murder doctrine, the juvenile court sustained an allegation charging the minor with murdering his accomplice. Our Supreme Court reversed. It reasoned: "Before the struggle began [minor] had done no more than participate actively in an armed robbery. His repeated admonitions to do what [his accomplice] said or 'he'll kill you' were directed toward safe completion of the underlying felony. The warnings and commands were conditional and explicitly aimed at obtaining [the victim's] property. Nothing he said or did suggested that [the victim] was going to be killed whether he cooperated or not. The minor simply voiced the threats already inherent in the dangerous felony. That alone is insufficient for a finding of [provocative act] murder even when it helped provoke the victim's lethal response." (*Id.*, at pp. 507–508, fn. omitted.)

Unlike the minor in *Joe R.*, appellant did far more than participate actively in an armed robbery. When Davis opened the front door, appellant "put [his gun] in [Davis's] face" and said, "You're fucked." From a distance of less than three or four feet, appellant pointed the gun at Baumann's head. Appellant was "waving his gun around" and was repeatedly "clicking the safety on and off." He threatened to shoot Baumann in the kneecaps and "make [him] paralyzed for the rest of [his] life." Appellant further threatened: "I'll fucking kill. I'll fucking shoot you right now."

Far beyond committing a simple armed robbery, appellant taunted, terrorized, and toyed with the victims for an extended period of time. While pointing his gun at Davis and Baumann, appellant laughed and ate their food. He ordered Davis to open a fortune cookie and read it. He asked Davis if he had seen the movie Pulp Fiction and laughed when Davis replied that he had not seen it.[3]

█ In *Joe R.* our Supreme Court distinguished that case from *Taylor v. Superior Court* (1970) 3 Cal.3d 578 [91 Cal.Rptr. 275, 477 P.2d 131], where it had upheld the application of the provocative act murder doctrine.[4] The *Joe R.* court noted: "[The *Taylor* court] concluded that the particular facts there proved would support a finding of additional conduct [beyond that

---

[3] The significance of appellant's reference to Pulp Fiction was never explained to the jury. Pursuant to Evidence Code sections 452, subdivision (h), and 459, we take judicial notice that Pulp Fiction is a 1994 crime movie that depicts taunting and terrorizing of a victim before killing.

[4] "*Taylor* was overruled in *People* v. *Antick* (1975) 15 Cal.3d 79, 92, footnote 12 [123 Cal.Rptr. 475, 539 P.2d 43], only insofar as it held that an accomplice's conduct that may have contributed to his own death could properly be considered in assessing the [defendant's] liability therefor." (*Pizano v. Superior Court, supra*, 21 Cal.3d at p. 138, fn. 3.)

inherent in an armed robbery] because the robbers' demeanor suggested peculiar instability and a propensity for gratuitous violence. The record here yields no similar indication that the minor was prepared to kill whether or not [the victim] complied with the robbers' demands." (*In re Joe R., supra,* 27 Cal.3d at p. 508.)[5] Unlike the minor in *Joe R.,* appellant's "demeanor suggested peculiar instability and a propensity for gratuitous violence." (*In re Joe R.,* at p. 508.) Appellant's demeanor led Davis to believe that he "was prepared to kill whether or not [Davis] complied with [his] demands." (*Ibid.*) When Davis begged for his life in the back room and appellant remained silent, Davis reasonably thought he was going to die. Appellant's conduct was egregiously provocative. We conclude that it easily falls within the purview of the provocative act murder doctrine.

*Disposition*

The judgment is affirmed.

Gilbert, P. J., and Perren, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 10, 2012, S204402.

---

[5] The *Joe R.* court summarized the facts in *Taylor* as follows: "[T]he accomplices, Smith and Daniels, entered the store (owned by Mr. and Mrs. West) for purposes of armed robbery while defendant waited outside in a getaway car. Daniels told Mr. West to 'put the money in the bag' and then ordered him to lie on the floor or 'we'll have an execution here.' He 'chattered insanely,' repeatedly referring to Smith's gun and threatening to 'blow [Mr. West's] head off' if West moved. Smith seemed 'apprehensive' and acted as if 'he was waiting for something big to happen.' While Daniels was forcing Mr. West to the floor Mrs. West, standing on a nearby ladder, drew a pistol and fired fatal shots at Smith." (*In re Joe. R., supra,* 27 Cal.3d at p. 505.)