Filed 11/19/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX


| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B241044 |
| | (Super. Ct. No. F435613) |
| Plaintiff and Respondent, | (San Luis Obispo County) |
| v. | |
| RYAN JAMES JOHNSON, | |
| Defendant and Appellant. | |


The "mastermind" of an armed home-invasion robbery who sends his accomplices to do his bidding can be convicted of first degree murder if one of his accomplices engages in provocative conduct and the victim kills in reasonable response to that conduct. In these circumstances malice is implied by law and imputed to the "mastermind" despite his absence from the scene of the crime.

Ryan James Johnson appeals from the judgment entered after his conviction by a jury of first degree murder (Pen.Code, §§ 187, subd. (a), 189),[1] first degree residential burglary (§§ 459, 460, subd. (a)), conspiracy to commit robbery (§§ 182, subd. (a)(1),

---

[1] All statutory references are to the Penal Code unless otherwise stated.

211), and two counts of first degree residential robbery. (§§ 211, 212.5, subd. (a).) The jury found true firearm enhancements within the meaning of section 12022, subdivision (a)(1). Appellant was sentenced to prison for 26 years to life. The murder conviction was based on the provocative act murder doctrine. In *People v. Baker-Riley* (2012) 207 Cal.App.4th 631, we affirmed the first degree murder conviction of appellant's codefendant and accomplice, Jesse Baker-Riley. Appellant and Baker-Riley were separately tried.

Appellant contends that (1) the evidence is insufficient to support his conviction of first degree murder, (2) the trial court erroneously instructed the jury, (3) the trial court abused its discretion in admitting evidence of a prior residential robbery, and (4) his sentence constitutes cruel and unusual punishment in violation of the federal and state constitutions. We affirm.

*Facts*

Peter Davis lived in Los Osos. He had a physician's recommendation for medical marijuana and grew marijuana plants in his backyard. A narcotics expert testified that he had a sufficient quantity of marijuana to be a supplier to people seeking to purchase it.

Appellant knew Davis and on July 18, 2009, he told Janine Lindemans that he "and his homies are taking care of something" and " '[w]e are going to come up big.' " Appellant explained "that they were taking care of somebody that was selling pot or dope . . . in our town, meaning Los Osos, and that the person had no business doing business like that in []our town, and that [appellant] . . . [and] his homies were basically doing a home invasion." Lindemans asked, " 'Are you talking about a home invasion robbery?' " Appellant replied, " 'Well, yeah, I guess, if you want to call it that.' " Appellant identified one of his "homies" as "Kelsey" (Kelsey Alvarez). Appellant said that they were going to "take . . . Pete's [Peter Davis's] pot, and that they had a gun." They intended to use the gun during the robbery. Appellant boasted "that he was running things," and he appeared to be "pretty proud of himself that he was the shot caller."

2

That same day Peter Davis and his friend, Dylan Baumann, were inside Davis's residence when they heard a knock on the door. Davis opened the door and saw two persons whom he did not recognize. They were Kelsey Alvarez and Jesse Baker-Riley. Baker-Riley "pulled out a large firearm and put it in [Davis's] face." Baker-Riley and Alvarez entered the residence. Baker-Riley said to Baumann, "[S]it down or I'll shoot you." Baumann testified that Baker-Riley "put his gun on my kneecaps and told me he was going to shoot off my kneecaps."

Baker-Riley demanded cash and marijuana. Baumann emptied his pockets of all items, including a cell phone. Baker-Riley took the cell phone and put it in his pocket.

Baker-Riley "pointed to a pile of vaporized pot that was on the table." He ordered Davis to wrap it in a paper towel and give it to him. Davis complied with the order. Baker-Riley was "clicking the safety" of his gun "on and off" and was "taunting" Davis and Baumann. He made them look at the gun, threatened to kill them if they "did anything," and said, "I'm quick on the trigger, homie." Baker-Riley warned: " 'I'm a fucking thug. You don't want[] to fuck with me, homie.' " He asked Baumann, "You ever seen 'Pulp Fiction,' homie?"[2]

Baker-Riley saw a fortune cookie on a table. He pointed the gun at Davis and said: " 'Open that fortune cookie, homie.' " Davis opened the cookie and, at Baker-Riley's direction, read the fortune inside. The fortune said: " 'There will be many upcoming opportunities. Take advantage of them.' " Baker-Riley laughed and "made a statement about how he was taking advantage of us." Baker-Riley ate some food that was on the table and, at gunpoint, forced Baumann and Davis to eat some of the food. Baker-Riley "kept asking, Where is the grass? Where is the marijuana? Where is your grass at? Where do you keep all your weed?' " Davis "kept repeating that [he] didn't have anything."

---

[2] "Pursuant to Evidence Code sections 452, subdivision (h), and 459, we take judicial notice that 'Pulp Fiction' is a 1994 crime movie that depicts taunting and terrorizing of a victim before killing." (*People v. Baker-Riley*, *supra*, 207 Cal.App.4th at p. 637, fn. 3.)

Baker-Riley saw marijuana drying in a back bedroom. He said, " 'Oh, here is their f-ing weed. Here is their grass.' " Baker-Riley pointed his gun at Davis and ordered him to walk into the back bedroom and sit on the bed. Davis complied with the order. He pleaded: " 'Don't kill me. I'm not going to do anything. Take what you want. Just don't kill me.' " Baker-Riley did not respond. Davis thought that he "was going to die," that Baker-Riley "was separating me to kill me."

Davis saw his own firearm next to the bed. He picked it up, aimed at Baker-Riley, and started firing. One of the bullets struck Alvarez in the chest and killed him.

*Provocative Act Murder Doctrine*

"Under the provocative act [murder] doctrine, when the perpetrator of a crime maliciously commits an act that is likely to result in death, and the victim kills in reasonable response to that act, the perpetrator is guilty of murder. [Citation.] 'In such a case, the killing is attributable, not merely to the commission of a felony, but to the intentional act of the defendant or his accomplice committed with conscious disregard for life.' [Citation.]" (*People v. Gonzalez* (2012) 54 Cal.4th 643, 655.)

"Provocative act murder has both a physical and a mental element which the prosecution must prove beyond a reasonable doubt. [Citation.] The *physical* element is satisfied when the defendant, or a *surviving accomplice* in the underlying crime, commits an act, the natural and probable consequence of which is the use of deadly force by a third party. [Citations.] When the defendant or surviving accomplice acts in such a manner and the third party kills in response, the provocateur can be said to have proximately caused the resulting death notwithstanding the intervening use of deadly force by the third party. [Citations.] And a participant in the underlying crime who does not actually commit a provocative act himself may nevertheless be vicariously liable for the killing caused by his provocateur accomplice based upon having aided and abetted commission of the underlying crime. [Citations.] Thus, under the provocative act doctrine, a defendant may be vicariously liable for the *provocative conduct* of his

4

surviving accomplice in the underlying crime. [Citation.]" (*People v. Mejia* (2012) 211 Cal.App.4th 586, 603.)

As to the mental element of provocative act murder, the People must prove "that the defendant personally harbored . . . malice." (*People v. Gonzales, supra*, 54 Cal.4th at p. 655; accord, *People v. Concha* (2009) 47 Cal.4th 653, 663.) But, malice may be implied: "[T]he central inquiry in determining criminal liability for a killing committed by a resisting victim or police officer is whether the *conduct* of a defendant or his accomplices was sufficiently provocative of lethal resistance to support a finding of implied malice." (*Taylor v. Superior Court* (1970) 3 Cal.3d 578, 583.)

Appellant contends that the evidence is insufficient to support his conviction for murder because "he did not personally harbor malice." "[T]he evidence showed at best that [he] harbored the intent to commit an armed robbery." To credit this contention we would have to hold, as a matter of law, that malice cannot be imputed to the "mastermind" of an armed home-invasion robbery if he is not personally present at the scene of the murder. We will not do so.

Based on *Taylor v. Superior Court*, *supra*, 3 Cal.3d 578 (*Taylor*), the evidence is sufficient. Taylor's accomplices, Daniels and Smith, committed a robbery inside a liquor store. Taylor "was waiting outside . . . in a getaway car." (*Id*., at p. 581.) During the robbery, the victims shot Smith in reasonable response to Daniels's provocative acts. The *Taylor* court concluded that "the evidence supported the magistrate's finding that reasonable and probable cause existed to charge [Taylor] with first degree murder." (*Id*., at p. 585.) The court reasoned: "If the trier of fact concludes that under the particular circumstances of the instant case Smith's death proximately resulted from acts of [Taylor's] accomplices done with conscious disregard for human life, the natural consequences of which were dangerous to life, then [Taylor] may be convicted of first degree murder." (*Id*., at p. 583.)

Thus, our Supreme Court imputed malice and first degree murder liability to the "wheelman" of a robbery/homicide even though he was "just" a getaway driver. Here,

5

appellant was the "mastermind" of an armed home-invasion robbery. He planned, directed, and supervised this crime. He is far more culpable than a getaway driver who may have played no role in the planning of the robbery. We are bound by, and adhere to the Supreme Court's opinion in *Taylor, supra*, 3 Cal.3d 578. (*Auto Equity Sales Inc, v. Superior Court* (1962) 57 Cal.2d 450. 455.) If a getaway driver, not actually present inside the building where the robbery takes place, has provocative conduct first degree murder liability, surely an absent "mastermind" of the robbery also has such liability.

In *People v. Antick* (1975) 15 Cal.3d 79, 91-92, our Supreme Court noted that in *Taylor* it had taken "the position that the conduct of the defendant's accomplice Daniels which resulted in accomplice Smith's death 'was sufficiently provocative of lethal resistance' to support a finding of implied malice. [Citation.] Therefore, Daniels could be held criminally responsible for Smith's death, although the actual killing was committed by the resisting victims, and the defendant Taylor could be vicariously liable for Daniels' crimes."[3] Likewise, here the conduct of appellant's accomplice, Baker-Riley, which resulted in accomplice Alvarez's death, was sufficiently provocative of lethal resistance to support a finding of implied malice. Thus, Baker-Riley was criminally responsible for Alvarez's death, and appellant was vicariously liable for Baker-Riley's crimes. (See also *People v. Gilbert, supra,* 63 Cal.2d at p. 704, italics added ["When the defendant *or his accomplice*, with a conscious disregard for life, intentionally commits an act that is likely to cause death, and his victim or a police officer kills in reasonable response to such act, the defendant is guilty of murder"].)[4]

In *Taylor* the Supreme Court observed that, to find a defendant guilty based on the provocative acts of his accomplice, the acts must be " 'committed in furtherance of the common design. [Citations.]' [Citation.]" (*Taylor*, *supra*, 3 Cal.3d at p. 583, fn. 1.) The court reiterated this principle in *People v. Antick*, *supra*, 15 Cal.3d at p. 88: "Where a

---

[3] *Taylor* was overruled on other grounds in *People v. Antick*, *supra*, 15 Cal.3d at p. 92, fn. 12.

[4] The judgment in *Gilbert* was vacated on other grounds in *Gilbert v. California* (1967) 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178.

murder . . . is attributable not to the acts of the defendant himself, but rather to the acts of his accomplice, the defendant's vicarious liability for the killing is based upon 'the rules defining principals and criminal conspiracies . . . . [For the defendant] [t]o be so guilty, however, the accomplice must cause the death *of another human being* by an act committed in furtherance of the common design.' [Citation.]" Substantial evidence supports the inference that Baker-Riley's provocative acts were committed in furtherance of the common design of facilitating the robbery and making it clear, to use appellant's words, that Davis "had no business" selling marijuana "in our town," i.e., Los Osos. It is reasonable to infer that Baker-Riley's aim was to so terrorize Davis that, not only would he surrender his property, but he would also desist from selling marijuana in Los Osos and would not report the robbery to the police.

Appellant claims that, even if the evidence is sufficient to support his conviction of murder, it is insufficient to establish murder in the first degree because the People failed to show "that he harbored a deliberate and premeditated intent to kill." As we noted in *People v. Baker-Riley*, *supra*, 207 Cal.App.4th at p. 635, " 'provocative act implied malice murders are first degree murders when they occur during the course of a felony enumerated in section 189 [e.g., robbery] that would support a first degree felony-murder conviction. [Citation.]' [Citation.]" Thus, there is no requirement that the People prove "a deliberate and premeditated intent to kill."

Relying on *People v. Concha*, *supra*, 47 Cal.4th 653, appellant argues that *Baker-Riley* was wrongly decided. In *Concha* the Supreme Court held that, when the defendant's "accomplice is killed by the intended victim in the course of an attempted murder," the "defendant may be convicted of first degree murder . . . if the defendant personally acted willfully, deliberately, and with premeditation during the attempted murder." (*Id*., at p. 658.) In a subsequent opinion, the Supreme Court explained that it had so held because "attempted murder is not one of the enumerated felonies in section 189. [Citation.]" (*People v. Gonzalez*, *supra*, 54 Cal.4th at p. 661, fn. 13.) Robbery and burglary, on the other hand, are felonies enumerated in section 189. Since *Baker-Riley*

7

and this case involve a killing committed during both a robbery and burglary, our decisions in these two cases do not conflict with *Concha*. (See also *People v. Mejia*, *supra*, 211 Cal.App.4th at p. 620 ["section 189 still may be used to elevate an implied malice provocative act murder to first degree so long as the *provocative act* which prompts the third party's use of lethal force occurs during the commission of a section 189 felony"].)

One final observation of the provocative act murder doctrine seems in order: a "mastermind's" conviction of murder based on that doctrine is sound public policy. Allowing a "mastermind" to escape liability for murder while his provocateur accomplice (Baker-Riley) suffers a first degree murder conviction would be inconsistent and unfair. It could also encourage a criminal planner to employ accomplices to do his bidding in his absence to shield himself from the application of the provocative act murder doctrine. Nothing in *People v. McCoy* (2001) 25 Cal.4th 1111, 1118-1119 compels, or even suggests the conclusion that a "mastermind" of an armed home-invasion robbery should not have first degree murder liability where the provocative act murder doctrine applies.

*Instructions/Intent*

Appellant claims that "the trial court erroneously failed to instruct the jury that it could not return a first degree murder conviction without finding that [he] personally acted with willfulness, deliberation, and premeditation." For the reasons discussed above, such an instruction would have misstated the law as declared in *People v. Baker-Riley, supra,* 207 Cal.App.4th at p. 635.

*Instructions/Malice*

Appellant argues that the trial court erroneously failed to instruct sua sponte that he could be convicted of murder only if he had personally harbored malice. The court was not required to so instruct because it gave CALCRIM No. 561, the standard instruction on provocative act murder when the defendant is an accomplice of the perpetrator of the provocative act. That instruction adequately explained the requirement of implied malice. The instruction stated that appellant could not be found guilty of

8

murder unless the People proved that (1) appellant was an accomplice of Baker-Riley; (2) Baker-Riley intentionally committed an act "[w]hose natural and probable consequences are dangerous to human life, because there is a high probability that the act will provoke a deadly response"; and (3) Baker-Riley "knew that the natural and probable consequences of the provocative act were dangerous to human life and then acted with conscious disregard for life."

*Instructions/Common Design*

Appellant asserts that the trial court erroneously failed to instruct sua sponte "that it could find [him] guilty of murder based on Mr. Baker-Riley's acts [only] if it found that Mr. Baker-Riley caused Mr. Alvarez's death 'by an act committed in furtherance of the common design.' [Citation.]" We need not and do not determine whether the trial court had a duty to instruct sua sponte on common design.[5] Assuming for purposes of discussion that it had such a duty, it is " 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.' [Citation.]" (*People v. Gonzalez*, *supra*, 54 Cal.4th at p. 663.) Davis was the intended target of the home invasion robbery. As previously discussed, Baker-Riley's provocative acts were committed in furtherance of the common design of facilitating the robbery and making it clear, to use appellant's words, that Davis "had no business" selling marijuana "in our town," i.e., Los Osos.

*Instructions/Voluntary Manslaughter*

Appellant argues that the trial court erroneously failed to instruct sua sponte on the lesser included offense of voluntary manslaughter. "[A] trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support." (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) The lesser included offense of voluntary manslaughter is without evidentiary

---

[5] To prevent this issue from arising in future cases, we suggest that CALCRIM No. 561 (Homicide: Provocative Act by Accomplice) be modified to require a finding that the accomplice's provocative act was in furtherance of the common design.

support.  That offense is committed when the defendant or his accomplice kills another person with either an intent to kill or with conscious disregard for life, but without malice aforethought.  (*People v. Bryant* (2013) 56 Cal.4th 959, 969-970.)  Voluntary manslaughter includes "a killing upon a sudden quarrel or heat of passion (§ 192, subd. (a)), [and] a killing in unreasonable self-defense [citation]."  (***Ibid***.)  Appellant has not cited any authority supporting a theory of voluntary manslaughter where, as here, the victim of a robbery kills the defendant's accomplice in reasonable response to the intentionally committed, provocative acts of a surviving accomplice.

### *Other Crime Evidence*

Appellant contends that the trial court abused its discretion in admitting evidence of a prior home invasion robbery.  The evidence was as follows: In March 2008 Ron Foulk was taking prescription Dilaudid pills for pain management.  Appellant, who was Foulk's neighbor, asked him for some of the pills.  Foulk replied that he "didn't have enough to be handing them out to the neighbors."  Four days later at about 9:30 p.m., Foulk heard "a loud, aggressive knock" on his door.  When he opened the door, appellant and two other men forced their way inside, shut the door, and locked it.  They were wearing latex gloves.  Foulk did not see a weapon.  Appellant demanded Foulk's Dilaudid pills.  One of appellant's accomplices was "ransacking through all of" Foulk's pill containers in the kitchen.  Another accomplice stood at the door to block Foulk's escape.  Appellant took Foulk's cell phone and corded home phone.  An accomplice took Foulk's Dilaudid pills.  Before appellant and his accomplices left, appellant said to Foulk in a "cocky" manner, " 'If you call the police, I'm going to kill you.' "

The trial court ruled that evidence of the prior robbery was admissible under Evidence Code section 1101, subdivision (b), to show intent and "common plan and scheme."  The court acknowledged that the evidence was "clearly . . . prejudicial because it's the exact same kind of crime."  But the court concluded that the probative value of the prior robbery was not substantially outweighed by its prejudicial impact.  (Evid. Code, § 352.)  The court instructed the jury that it may consider evidence of the prior robbery

10

"for the limited purpose of deciding whether or not: [¶] 1. The defendant acted with the intent to commit robbery in this case, or [¶] 2. The defendant had a plan or scheme to commit the offense alleged in this case."

" 'Evidence of uncharged crimes is admissible to prove . . . common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of . . . common design or plan, or intent.  [Citation.]'  [Citation.]" (*People v. Foster* (2010) 50 Cal.4th 1301, 1328.)  " 'The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent. [Citation.] . . . In order to be admissible to prove intent, the uncharged conduct must be sufficiently similar to support the inference that the defendant " 'probably harbor[ed] the same intent in each instance.' [Citations.]"  [Citation.]'  [Citation.]  'A greater degree of similarity is required in order to prove the existence of a common design or plan. . . . [E]vidence of uncharged misconduct must demonstrate "not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are individual manifestations." ' [Citation.]"  (*Ibid*.)

"If evidence of prior conduct is sufficiently similar to the charged crimes to be relevant to prove the defendant's intent [or] common plan, . . . the trial court then must consider whether the probative value of the evidence 'is "substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid.Code, § 352.)'  [Citation.] 'Rulings made under [Evidence Code sections 1101 and 352] are reviewed for an abuse of discretion.  [Citation.]'  [Citation.]  'Under the abuse of discretion standard, "a trial court's ruling will not be disturbed, and reversal . . . is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." [Citation.]'  [Citation.]"  (*People v. Foster*, *supra*, 50 Cal.4th at pp. 1328-1329.)

Appellant maintains that "the other-crimes evidence was insufficiently similar to the charged incident to justify its admission" to prove intent and common design or plan. We disagree. Both crimes were home invasion robberies. The main purpose of the crimes was to obtain drugs. The modus operandi used to gain admission into the residences was the same: knocking on the front door and forcing entry when the victim opened the door. In both crimes, appellant was assisted by two accomplices and was the "mastermind."

Appellant argues that the trial court abused its discretion because the probative value of the other crime evidence "was greatly outweighed by the prejudicial effect of the evidence in showing [his] disposition to commit precisely the criminal act charged in this case -- residential robbery -- and in 'tending to evoke an emotional bias against' [him]." The trial court did not abuse its discretion. The prior residential robbery was highly probative evidence. "There was not a substantial danger of undue prejudice because the circumstances of the [Foulk] incident were no more inflammatory [actually much less inflammatory] than the circumstances of the current incident involving [Davis]. [Citation.]" (*People v. Callahan* (1999) 74 Cal.App.4th 356, 371.) "The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. . . . 'The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues.' " (*People v. Karis* (1988) 46 Cal.3d 612, 638.)

*Cruel and Unusual Punishment*

Appellant argues that "sentencing him to a term of 25 years to life for a killing that occurred during a robbery he was not present for and that he could not have reasonably anticipated violates the cruel and unusual punishment clauses of the United States and California Constitutions." Under the Eighth Amendment of the United States Constitution, "the courts examine whether a punishment is grossly disproportionate to the

crime." (*People v. Murray* (2012) 203 Cal.App.4th 277, 284.) "Under the California Constitution, a sentence is cruel or unusual if it is so disproportionate to the crime committed that it shocks the conscience and offends fundamental notions of human dignity." (*Id*., at p. 285.)

Appellant forfeited the cruel and unusual punishment issue by not asserting it in the trial court. (*People v. Norman* (2003) 109 Cal.App.4th 221, 229-230.) In any event, appellant's sentence is not disproportionate to his crime. "*Harmelin v. Michigan* (1991) 501 U.S. 957 [111 S.Ct. 2680, 115 L.Ed.2d 836], . . . upheld a sentence of LWOP [life without the possibility of parole] for possession of 672 grams of cocaine, a serious crime, but less heinous than" the crimes committed by appellant. (*People v. Rodriguez* (1998) 66 Cal.App.4th 157, 173.) Appellant was the "mastermind" of the home-invasion robbery. He sent his accomplices to do his bidding and knew that they were going to use a gun to accomplish his goals. To say that appellant "could not have reasonably anticipated" the killing is a premise which, to put it bluntly, is far-fetched. Moreover, appellant is a recidivist. He has been convicted of numerous misdemeanors and four felonies, and he has served prior prison terms.

*Disposition*

The judgment is affirmed.

CERTIFIED FOR PUBLICATION

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J.

13

Barry T. LaBarbera, Judge

Superior Court County of San Luis Obispo


Peter Gold , under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven E. Mercer, Peggy G. Huang, Deputy Attorneys General, for Plaintiff and Respondent.