Filed 12/1/20 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RYAN JAMES JOHNSON,<br><br>    Defendant and Appellant. | 2d Crim. No. B299044<br>(Super. Ct. No. F435613002)<br>(San Luis Obispo County)<br><br>ORDER MODIFYING<br>OPINION AND DENYING<br>REHEARING<br>[NO CHANGE IN<br>JUDGMENT] |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JESSE MICHAEL BAKER-<br>RILEY,<br><br>    Defendant and Appellant. | 2d Crim. No. B302697<br>(Super. Ct. No. F435613001)<br>(San Luis Obispo County) |

THE COURT:

It is ordered that the opinion filed herein on November 9, 2020, be modified as follows:

On page 14, the first full paragraph, beginning 'There is no merit to Johnson's imaginative claim" is deleted and the following paragraph is inserted in its place:

"We need not decide whether, after the effective date of S.B 1437, Johnson "could not be convicted of [provocative act murder] because of changes to Section 188 . . . ." (§ 1170.95, subd. (a)(3).) If he could not be so convicted today, he would still be ineligible for relief under section 1170.95 because he was not originally "convicted of felony murder or murder under a natural and probable consequences theory . . . ." (*Id.*, subd. (a).) As we explain below, we cannot conclude that the Legislature intended to afford relief to persons convicted of murder under other theories such as provocative act murder.

There is no change in judgment.

Appellant Ryan James Johnson's Petition for Rehearing is denied.

GILBERT, P.J.   YEGAN, J.   PERREN, J.

2

Filed 11/9/20 (unmodified opinion)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RYAN JAMES JOHNSON,<br><br>    Defendant and Appellant. | 2d Crim. No. B299044<br>(Super. Ct. No. F435613002)<br>(San Luis Obispo County) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JESSE MICHAEL BAKER-RILEY,<br><br>    Defendant and Appellant. | 2d Crim. No. B302697<br>(Super. Ct. No. F435613001)<br>(San Luis Obispo County) |

Ryan James Johnson and Jesse Michael Baker-Riley appeal from orders denying their petitions to vacate their first degree murder convictions and obtain resentencing pursuant to

Senate Bill No. 1437 (S.B. 1437), which went into effect on January 1, 2019. (See Stats. 2018, ch. 1015, § 4.) S.B. 1437 added section 1170.95 to the Penal Code.[1] If a defendant has previously been convicted of murder under the felony-murder rule or the natural and probable consequences doctrine and qualifies for relief under section 1170.95, the statute permits the defendant to petition to vacate the conviction and obtain resentencing on any remaining counts.

Appellants were separately tried before different juries for the same criminal conduct – a home-invasion armed robbery that went awry when one of the victims shot and killed an accomplice. Appellants' convictions were based solely upon the provocative act murder doctrine.

The Superior Court denied appellants' petitions because it concluded that section 1170.95 is unconstitutional. We need not consider this issue. Irrespective of the constitutionality of section 1170.95, appellants are ineligible for relief because they were not convicted of murder pursuant to the felony-murder rule or the natural and probable consequences doctrine. They were convicted of murder under the provocative act murder doctrine. (See *People v. Lee* (2020) 49 Cal.App.5th 254, 257-258 (*Lee*), review granted July 15, 2020, S262459 [petitioner not entitled to resentencing under section 1170.95 because he was convicted of provocative act murder].)[2]

---

[1] All statutory references are to the Penal Code.

[2] "Pending review and filing of the Supreme Court's opinion," *Lee* has "no binding or precedential effect, and may be cited for potentially persuasive value only." (Cal. Rules of Court, rule 8.1115(e)(1).)

2

Because the appeals involve the same criminal conduct and common legal issues, in the interest of judicial economy and efficiency we order the appeals consolidated for the purpose of decision.  We issue a single opinion affirming the orders denying appellants' petitions.  (See *People v. Schnaible* (1985) 165 Cal.App.3d 275, 277.)

*Convictions and Prior Appeals*

In addition to being convicted of first degree murder (§§ 187, subd. (a), 189), Johnson was convicted of first degree residential burglary (§§ 459, 460, subd. (a)), conspiracy to commit robbery (§§ 182, subd. (a)(1), 211), and two counts of first degree residential robbery.  (§§ 211, 212.5, subd. (a).)  The jury found true firearm enhancements within the meaning of section 12022, subdivision (a)(1).  Johnson was sentenced to prison for 26 years to life.

In addition to being convicted of first degree murder, Baker-Riley was convicted of first degree residential burglary and two counts of first degree residential robbery.  The jury found true firearm enhancements within the meaning of sections 12022.53, subdivision (b) and 12022.5, subdivision (a).  Baker-Riley was sentenced to prison for 35 years to life.

In *People v. Johnson* (2013) 221 Cal.App.4th 623 (*Johnson*), and *People v. Baker-Riley* (2012) 207 Cal.App.4th 631 (*Baker-Riley*), we affirmed the judgments.

---

Since we do not consider the constitutionality of section 1170.95, we deny as moot the People's motions to take judicial notice of various documents in support of their argument that the statute is unconstitutional.  We grant Johnson's motion to take judicial notice of a jury instruction given in his case:  CALCRIM No. 561, entitled "Homicide: Provocative Act by Accomplice."

3

*Facts*

Except as otherwise noted, the facts are taken from the statement of facts in our prior opinion, *Johnson*, *supra*, 221 Cal.App.4th at pp. 627-629. A separate statement of facts is set forth in *Baker-Riley*, *supra*, 207 Cal.App.4th at pp. 633-634. The two statements are similar except that the statement of facts in *Baker-Riley* does not mention Johnson's conduct.

"Peter Davis lived in Los Osos. . . . [¶] [Johnson] knew Davis and on July 18, 2009, he told Janine Lindemans that he 'and his homies are taking care of something' and '[w]e are going to come up big.' [Johnson] explained 'that they were taking care of somebody that was selling pot or dope . . . in our town, meaning Los Osos, and that the person had no business doing business like that in [ ]our town, and that [Johnson] . . . [and] his homies were basically doing a home invasion.' Lindemans asked, 'Are you talking about a home invasion robbery?' [Johnson] replied, 'Well, yeah, I guess, if you want to call it that.' [Johnson] identified one of his 'homies' as 'Kelsey' (Kelsey Alvarez). [Johnson] said that they were going to 'take . . . Pete's [Peter Davis's] pot, and that they had a gun.' They intended to use the gun during the robbery. [Johnson] boasted 'that he was running things,' and he appeared to be 'pretty proud of himself that he was the shot caller.'

"That same day Peter Davis and his friend, Dylan Baumann, were inside Davis's residence when they heard a knock on the door. Davis opened the door and saw two persons whom he did not recognize. They were Kelsey Alvarez and Jesse Baker-Riley. Baker-Riley 'pulled out a large firearm and put it in [Davis's] face.' Baker-Riley and Alvarez entered the residence. Baker-Riley said to Baumann, '[S]it down or I'll shoot you.'

4

Baumann testified that Baker-Riley 'put his gun on my kneecaps and told me he was going to shoot off my kneecaps.' [¶] Baker-Riley demanded cash and marijuana. Baumann emptied his pockets of all items, including a cell phone. Baker-Riley took the cell phone and put it in his pocket.

"Baker-Riley 'pointed to a pile of vaporized pot that was on the table.' He ordered Davis to wrap it in a paper towel and give it to him. Davis complied with the order. Baker-Riley was 'clicking the safety' of his gun 'on and off' and was 'taunting' Davis and Baumann. He made them look at the gun, threatened to kill them if they 'did anything,' and said, 'I'm quick on the trigger, homie.' Baker-Riley warned: 'I'm a fucking thug. You don't want[ ] to fuck with me, homie. . . .'[3]

"Baker-Riley saw a fortune cookie on a table. He pointed the gun at Davis and said: 'Open that fortune cookie, homie.' Davis opened the cookie and, at Baker-Riley's direction, read the fortune inside. The fortune said: 'There will be many upcoming opportunities. Take advantage of them.' Baker-Riley laughed and 'made a statement about how he was taking advantage of us.' Baker-Riley ate some food that was on the table and, at gunpoint,

---

[3] In our prior *Baker-Riley* opinion, the statement of facts includes the following excerpts: Baker-Riley said to Baumann: "'I'll fucking make you paralyzed for the rest of your fucking life. I'll shoot your fucking kneecaps.'" (*Baker-Riley, supra,* 207 Cal.App.4th at p. 634.) "[Baker-Riley] pointed his gun at Davis and Baumann and ordered them to empty their pockets. They did as they were told. [Baker-Riley] said, 'I'll fucking kill. I'll fucking shoot you right now.' . . . Baumann thought, 'I can't believe I'm going to die and I haven't lived the life I want to fulfill.'" (*Ibid.*)

forced Baumann and Davis to eat some of the food. . . .

"Baker-Riley saw marijuana drying in a back bedroom. He said, 'Oh, here is their f-ing weed. Here is their grass.' Baker-Riley pointed his gun at Davis and ordered him to walk into the back bedroom and sit on the bed. Davis complied with the order. He pleaded: 'Don't kill me. I'm not going to do anything. Take what you want. Just don't kill me.' Baker-Riley did not respond. Davis thought that he 'was going to die,' that Baker-Riley 'was separating me to kill me.'

"Davis saw his own firearm next to the bed. He picked it up, aimed at Baker-Riley, and started firing. One of the bullets struck Alvarez in the chest and killed him."

### S.B. 1437

"Under the felony-murder rule as it existed prior to Senate Bill 1437, a defendant who intended to commit a specified felony [such as robbery] could be convicted of murder for a killing during the felony, or attempted felony, without further examination of his or her mental state. [Citation.] . . . [¶] Independent of the felony-murder rule, the natural and probable consequences doctrine rendered a defendant liable for murder if he or she aided and abetted the commission of a criminal act (a target offense), and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and probable consequence of the target offense. [Citation.]" (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 247-248.)

In S.B. 1437 the Legislature declared, "It is necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major

6

participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) To achieve this goal, S.B. 1437 amended section 189, insofar as it pertains to the felony-murder rule, to add subdivision (e), which provides: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: (1) The person was the actual killer. (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (Stats. 2018, ch. 1015, § 3.)

S.B. 1437 also amended section 188 to add subdivision (a)(3), which provides, "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (Stats. 2018, ch. 1015, § 2.) The amendment of section 188 "eliminated liability for murder under the natural and probable consequences doctrine." (*Lee, supra*, 49 Cal.App.5th at p. 262.) The Legislature declared, "A person's culpability for murder must be premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1, subd. (g).)

Section 1170.95, added by S.B. 1437, gives retroactive effect to the changes in sections 188 and 189. It provides in subdivision (a), "A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the

7

petitioner's murder conviction vacated and to be resentenced on any remaining counts when" certain conditions apply.  One of the conditions is that "[t]he petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made [by S.B. 1437] effective January 1, 2019." (*Id.*, subd. (a)(3).)

*Provocative Act Murder Doctrine*

"'Under the provocative act [murder] doctrine, when the perpetrator of a crime maliciously commits an act that is likely to result in death, and the victim kills in reasonable response to that act, the perpetrator is guilty of murder.  [Citations.]  "In such a case, the killing is attributable, not merely to the commission of a felony, but to the intentional act of the defendant or his accomplice committed with conscious disregard for life." [Citation.]'  [Citation.]  [¶] . . . '[A] participant in the underlying crime who does not actually commit a provocative act himself may nevertheless be vicariously liable for the killing caused by his provocateur accomplice based upon having aided and abetted commission of the underlying crime.  [Citations.]  Thus, under the provocative act doctrine, a defendant may be vicariously liable for the provocative *conduct* of his surviving accomplice in the underlying crime.  [Citation.]'  [Citation.]" (*Johnson*, *supra*, 221 Cal.App.4th at pp 629-630.)

"As to the mental element of provocative act murder, the People must prove 'that the defendant personally harbored . . . malice.'  [Citations.]  But, malice may be implied:  '[T]he central inquiry in determining criminal liability for a killing committed by a resisting victim . . . is whether the *conduct* of a defendant or his accomplices was sufficiently provocative of lethal resistance to support a finding of implied malice.'  [Citation.]" (*Johnson*, *supra*, 221 Cal.App.4th at p. 630.)

8

*Appellants Not Eligible for Relief under*
*Felony-Murder Provision of Section 1170.95*

Appellants cannot seek relief under the felony-murder provision of section 1170.95. They were convicted of provocative act murder, not felony murder. "When someone other than the defendant or an accomplice kills during the commission or attempted commission of a crime, the defendant is not liable under felony-murder principles but may nevertheless be prosecuted for murder under the *provocative act* doctrine. . . . Under the *felony-murder rule,* if an accomplice is killed by a crime victim and not by the defendant, the defendant cannot be held liable for the accomplice's death. [Citations.] The provocative act doctrine is not so limited. Under the provocative act doctrine, . . . 'the killing is attributable, not merely to the commission of a felony, but to the intentional act of the defendant or his accomplice committed with conscious disregard for life.'" (*People v. Gonzalez* (2012) 54 Cal.4th 643, 654-655 (*Gonzales*).)

Even though he was not convicted of felony murder, Baker-Riley contends he is eligible for relief under section 1170.95 because the felony-murder rule was invoked to determine the degree of the murder, i.e., murder of the first degree. (See *Baker-Riley*, *supra*, 207 Cal.App.4th at p. 635 ["'provocative act implied malice murders are first degree murders when they occur during the course of a felony enumerated in section 189 that would support a first degree felony-murder conviction'"].) Therefore, Baker-Riley argues: "[H]is conviction is inextricably intertwined with the felony murder rule, since it is only by virtue of that rule that the *mens rea* required for first degree murder is imputed to the defendant. . . . This . . . provides an additional basis for appellant's eligibility for resentencing under the new law . . . ."

We disagree. The language of section 1170.95, subdivision (a) clearly and unambiguously states that "[a] person convicted of felony murder" may file a petition for relief. Although the felony-murder rule was invoked to determine the degree of Baker-Riley's and Johnson's murder, it was legally impossible for them to have been "convicted of felony murder" because one of the victims, not Baker-Riley, Johnson, or their accomplice, fired the fatal shot. (*Gonzalez*, *supra*, 54 Cal.4th at pp. 654-655.) Thus, appellants do not qualify for relief pursuant to the felony-murder provision of section 1170.95.

*Appellants' Not Eligible for Relief under "Natural and Probable Consequences" Provision of Section 1170.95*

Because they were not convicted of felony murder, appellants are eligible for section 1170.95 relief only if they were "convicted of . . . murder under a natural and probable consequences theory" and could not be convicted of murder today because of changes made by S.B. 1437. (§ 1170.95, subd. (a)(3).) "'[U]nder the natural and probable consequences doctrine, an aider and abettor is guilty not only of the intended crime, but also "[of] any other offense that was a 'natural and probable consequence' of the crime aided and abetted."'" (*People v. Chiu* (2014) 59 Cal.4th 155, 158 (*Chui*).) "'By its very nature, aider and abettor culpability under the natural and probable consequences doctrine is not premised upon the intention of the aider and abettor to commit the nontarget offense because the nontarget offense was not intended at all. It imposes vicarious liability for any offense committed by the direct perpetrator that is a natural and probable consequence of the target offense." (*Id.* at p. 164.)

"[A] person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." (*People v. Beeman* (1984) 35 Cal.3d 547, 561.)

*Baker-Riley Not Eligible for Relief under*
*"Natural and Probable Consequences" Provision*

Baker-Riley was not an aider and abettor. He was a direct perpetrator of the crimes committed during the home-invasion robbery. He was also a direct perpetrator of the acts that provoked Davis to fire his gun. The legislature made clear that S.B. 1437 would not benefit "a major participant in the underlying felony [such as Baker-Riley] who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see also § 189, subd. (e)(3).)

Nevertheless, Baker-Riley claims that he qualifies for relief under section 1170.95 because, "[a]s currently characterized by the California Supreme Court, provocative act murder is clearly one particular subset of the natural and probable consequences doctrine." In support of his claim, Baker-Riley cites the following passage from *Gonzales*, *supra*, 54 Cal.4th at pp. 655-656: "When the defendant commits an inherently dangerous felony, the victim's self-defensive killing is generally found to be a natural and probable response to the defendant's act, and not an independent intervening cause that relieves the defendant of liability."

The above-quoted passage from *Gonzales* does not support Baker-Riley's claim that provocative act murder is a "subset of

11

the natural and probable consequences doctrine." The passage relates to proximate cause. (See *Lee*, *supra*, 49 Cal.App.5th at p. 266 [similar statement by Supreme Court in *People v. Concha* (2009) 47 Cal.4th 653, 661, was "made . . . in the context of explaining that a conviction for provocative act murder requires proof of proximate causation"].) The *Gonzales* court noted: "An important question in a provocative act case is whether the act *proximately caused* an unlawful death. '[T]he defendant is liable only for those unlawful killings proximately caused by the acts of the defendant or his accomplice. . . . "[I]f the eventual victim's death is not the natural and probable consequence of a defendant's [provocative] act, then liability cannot attach." [Citation.]'" (*Gonzales*, *supra*, 54 Cal.4th at p. 655.)

Baker-Riley is not assisted by S.B. 1437's amendment of section 188 to add the provision, "Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Malice was not imputed to Baker-Riley based solely on his participation in the crime of robbery. It was imputed to him based on his commission during the robbery of provocative acts that manifested a conscious disregard for life. Baker-Riley therefore does not satisfy the requirement that he "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(3).)

*Johnson Not Eligible for Relief under*
*"Natural and Probable Consequences" Provision*

Unlike Baker-Riley, Johnson was an aider and abettor. He was not present when the robbery and provocative acts occurred. "[Johnson] was the 'mastermind' of the home-invasion robbery. He sent his accomplices to do his bidding and knew that they

12

were going to use a gun to accomplish his goals." (*Johnson, supra*, 221 Cal.App.4th at p. 636.) "He planned, directed, and supervised this crime." (*Id.* at p. 630.)

Although Johnson was an aider and abettor, he is ineligible for section 1170.95 relief because he was not convicted of murder pursuant to the natural and probable consequences doctrine, i.e., he was not convicted under the theory that a principal (Baker-Riley) in the commission of the target crime (robbery) had committed a nontarget crime (murder) that was a natural and probable consequence of the target crime. (See *People v. Smith* (2014) 60 Cal.4th 603, 611.) He was convicted of murder on a provocative act theory.

*Johnson's Legislative Intent Argument*

"'If there is no ambiguity in the language [of a statute], we presume the Legislature meant what it said, and the plain meaning of the statute governs. [Citation.]'" (*Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063.) Johnson "concedes that under such a 'plain meaning' interpretation of subdivision (a) of section 1170.95, the Court could assume that [he] does not qualify for relief under this section as he was not convicted of murder under the felony murder rule or the natural and probable consequences theory."

But Johnson with some imaginative thinking, argues "that harmonizing the entirety of . . . [S.B.] 1437, consideration of the object of the legislation and the evils to be remedied, and the legislat[ive] history clearly leads to a finding that the Legislature intended [that he be] included in the relief available under section 1170.95." Johnson's argument is based on the assumption that he "could not be convicted of murder if he were to go to trial subsequent to the enactment of [S.B.] 1437." This

13

assumption in turn is based on S.B. 1437's amendment of section 188 to add the provision, "Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Johnson claims, "[I]t is clear that [his] conviction was based on malice imputed to him 'based solely on his participation' in a conspiracy to commit the crime of robbery [that] led to the death of a co-conspirator [Alvarez]." Johnson reasons that, since he could not today be convicted of provocative act murder because of changes made to section 188 by S.B. 1437, the Legislature must have intended to permit him to seek relief from his conviction pursuant to section 1170.95.

There is no merit to Johnson's imaginative claim. In our view he could be convicted today of provocative act murder.

"If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*People v. Knowles* (1950) 35 Cal.2d 175, 183.) The express language in section 1170.95 and its legislative history show that the Legislature intended the statute to afford relief only to "[a] person convicted of felony murder or murder under a natural and probable consequences theory . . . ." (§ 1170.95, subd. (a).) "When describing the proposed petition process, the Legislature consistently referred to relief being available to individuals charged in a complaint, information or indictment 'that allowed the prosecution to proceed under a theory of first degree felony murder, second degree felony murder, or murder under the natural and probable consequences doctrine' . . . ." (*People v. Lopez* (2019) 38 Cal.App.5th 1087, 1105, review granted Nov. 13, 2019, S258275.)

14

Johnson in effect is contending that the omission of "provocative act murder" from section 1170.95, subdivision (a), was a legislative oversight. "[I]f the omission was the product of legislative oversight, we cannot correct the mistake." (*People v. Superior Court* (2003) 107 Cal.App.4th 488, 494.) "[T]he Legislature should provide the remedy." (*People v. Pecci* (1999) 72 Cal.App.4th 1500, 1506; see *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 827 ["to insert words into the statute . . . would violate the cardinal rule that courts may not add provisions to a statute"]; accord, *People v. Guzman* (2005) 35 Cal.4th 577, 587.)

*Johnson's Equal Protection Argument*

Johnson claims that, if section 1170.95 does not apply to him, it violates equal protection under the federal and California constitutions. "'"The concept of the equal protection of the laws compels recognition . . . that persons similarly situated with respect to the legitimate purpose of the law receive like treatment."' [Citation.] 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.'" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.) "Where two or more groups are properly distinguishable for purposes of the challenged law, it is immaterial if they are indistinguishable in other respects." (*People v. Barrett* (2012) 54 Cal.4th 1081, 1107.)

Johnson and persons convicted of felony murder or murder under the natural and probable consequences doctrine are not similarly situated for equal protection purposes. Johnson was convicted of murder based on Baker-Riley's provocative acts that caused Davis to shoot an accomplice. Felony-murder principles do not apply to such a factual scenario. (*Gonzalez, supra*, 54

15

Cal.4th at pp. 654-655.) Nor does the natural and probable consequences doctrine apply because Davis's shooting of the accomplice was not "'"a 'natural and probable consequence' of the crime aided and abetted,"'" but instead was a natural and probable consequence of Baker-Riley's provocative acts. (*Chiu*, *supra*, 59 Cal.4th at p. 158.)

Johnson is also not similarly situated to persons convicted of felony murder or murder under the natural and probable consequences doctrine because "[u]nlike [these murders], '[a] murder conviction under the provocative act doctrine . . . requires proof that the defendant personally harbored the mental state of malice . . . .'"[4] (*Lee*, *supra*, 49 Cal.App.5th at p. 264, quoting from *Gonzalez*, *supra*, 54 Cal.4th at p. 655.) "Because [Johnson] was convicted of provocative act murder, the jury necessarily found he acted with malice aforethought." (*Lee*, *supra*, at p. 265.) In our prior opinion, we rejected Johnson's contention "that the evidence is insufficient to support his conviction for murder because 'he did not personally harbor malice.'" (*Johnson, supra*, 221 Cal.App.4th at p. 630.) We reasoned, "To credit this contention we would have

_____

[4] "Liability for felony murder does not depend on an examination of 'the individual state of mind of each person causing an unlawful killing to determine whether the killing was with or without malice . . . .' . . . 'The felony-murder rule generally acts as a substitute for the *mental state* ordinarily required for the offense of murder.'" (*People v. Cavitt* (2004) 33 Cal.4th 187, 205.) "The natural and probable consequences doctrine . . . allows an aider and abettor to be convicted of murder, *without malice* . . . ." (*People v. Culuko* (2000) 78 Cal.App.4th 307, 322, italics added.)

16

to hold, as a matter of law, that malice cannot be imputed to the 'mastermind' of an armed home-invasion robbery if he is not personally present at the scene of the murder.  We will not do so." (*Ibid*.)

*Conclusion*

Both appellants are ineligible for relief pursuant to section 1170.95 because they were convicted of provocative act murder, not "felony murder or murder under a natural and probable consequences theory."  (*Id*., subd. (a).)

*Disposition*

The orders in B299044 and B302697 denying appellants' petitions for relief under section 1170.95 are affirmed.

<u>CERTIFIED FOR PUBLICATION</u>

YEGAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

17

Dodie A. Harman, Judge

Superior Court County of San Luis Obispo

_____

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant, Ryan Johnson.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant, Jesse Baker-Riley.

Dan Dow, District Attorney, Eric Dobroth, Assistant District Attorney, Melissa Chabra, Christopher G. Peuvrelle, Deputy District Attorneys, for Plaintiff and Respondent.

Mark Zahner, Chief Executive Officer; Michael A. Hestrin, District Attorney, Alan D. Tate, Lead Deputy District Attorney; Jason Anderson, District Attorney, James R. Secord, Deputy District Attorney, as Amicus Curiae on behalf of Plaintiff and Respondent.