Filed 8/17/16  P. v. Oliva CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SANTOS J. GUEVARA OLIVA,<br><br>    Defendant and Appellant. | 2d Crim. No. B265008<br>(Super. Ct. No. 1426137)<br>(Santa Barbara County) |

Santos J. Guevara Oliva appeals from the judgment entered after a jury had convicted him of forcible rape (Pen. Code § 261, subd. (a)(2))[1] and aggravated sexual assault by means of forcible rape of a child.  (§ 269, subd. (a)(1).)  The jury found true an enhancement that appellant had personally inflicted great bodily injury.  (§ 12022.7.)  Because of the enhancement, on the forcible rape count appellant was sentenced to prison for life without the possibility of parole.  (§ 667.61, subds. (c)(1), (d)(6), (j)(1).)

Appellant contends that that the trial court (1) failed to instruct the jury sua sponte on a lesser included offense, (2) erroneously instructed the jury on the great bodily injury enhancement, (3) abused its discretion in admitting evidence of appellant's uncharged sexual misconduct, and (4) erroneously refused to disqualify itself.  In addition, appellant asserts that during closing argument the prosecutor misstated the law concerning great bodily injury.  Appellant's final contention is that his sentence

---

[1] Unless otherwise stated, all statutory references are to the Penal Code.

constitutes cruel and/or unusual punishment under the federal and state constitutions. We affirm.

## Facts

L.N. lived with her mother and appellant, who was not her father. One night in 2012 when her mother was not at home, L.N. was lying on a bed watching television. She was 13 years old. Appellant was lying on the bed next to L.N. He touched her breast under her clothing and forced his tongue into her mouth. He "was trying to pull . . . down" her pants, but L.N. "kept pulling them up." Appellant eventually pulled down her pants and put his fingers inside her "private part." L.N. tried to "push his hand out" but was unable to do so because he was "way stronger." "At the end," she "pushed him away" and "just stood up and left." Appellant said, "'Don't tell anybody. Don't tell any of your friends.'" Appellant could have put his penis inside of her, but L.N. did not see his penis.

L.N. went into the bathroom. She "saw something gooey between [her] legs." "It was something that came out of [appellant]." She did not tell her mother because she was scared.

In January 2013 a doctor informed L.N. that she was pregnant. She told the doctor that appellant "had been assaulting her" and had impregnated her. An ultrasound showed that the age of the fetus was 17 weeks. L.N. elected to have an abortion. A DNA test of fetal tissue showed that appellant was the father.

After L.N.'s pregnancy diagnosis, appellant fled. He was arrested in Maryland.

At trial appellant did not testify. During closing argument, defense counsel conceded that appellant had nonconsensual sexual intercourse with L.N. Counsel claimed that appellant had not used force to accomplish the act of sexual intercourse.

### Failure to Instruct Sua Sponte on Lesser Included Offense

The trial court instructed the jury on the charged offense of aggravated sexual assault by means of forcible rape of a child under the age of 14 years and more than 7 years younger than the perpetrator. (§ 269, subd. (a)(1).) Appellant argues that,

2

pursuant to the accusatory pleading test for lesser included offenses, the trial court erroneously failed to instruct sua sponte on the lesser included offense of unlawful sexual intercourse as defined in section 261.5, subdivision (c). The statute applies to "an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor" who is more than three years younger than the perpetrator. (§ 261.5, subds. (a), (c).)

We need not decide whether, under the accusatory pleading test, the charged offense necessarily includes the lesser offense of unlawful sexual intercourse. A court is not required to instruct on a lesser included offense "when there is no evidence the offense was less than that charged." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1085.) Here, there is no evidence that appellant did not use force to accomplish an act of sexual intercourse with L.N. Thus, the trial court was not required to instruct sua sponte on unlawful sexual intercourse.

*Jury Instruction on Great Bodily Injury and*
*Prosecutor's Closing Argument on this Issue*

In *People v. Cross* (2008) 45 Cal.4th 58, 61, our Supreme Court held that a finding of great bodily injury can be supported by evidence of "a pregnancy without medical complications that results from unlawful but nonforcible sexual conduct with a minor . . . ." The Supreme Court concluded that the trial court had erred in instructing the jury that "'an abortion may constitute great bodily injury.'" (*Id*., at p. 66.) The instruction was "'"correct in law but irrelevant"'" because "there was no evidence [defendant] personally performed the abortion." (*Id*., at p. 67.) The great bodily injury enhancement requires that the injury be personally inflicted by the defendant. (§ 12022.7.) In a concurring opinion, Justice Baxter stated, "[T]he point might be clarified in future cases by instructing the jury along these lines: 'A pregnancy may constitute great bodily injury. You may consider the circumstances and effects of the abortion of that pregnancy in determining whether the pregnancy constituted great bodily injury in this case.'" (*People v. Cross*, *supra*, 45 Cal.4th at p. 69, fn. 1, conc. opn. of Baxter, J.)

Here, Justice Baxter's suggested instruction was given verbatim. Appellant claims that the instruction was erroneous because "'circumstances and effects' of an abortion can easily be construed to include the psychological and emotional trauma attendant upon an abortion, which by statute are not proper considerations for determining great bodily injury." Section 12022.7, subdivision (f) provides, "'[G]reat bodily injury' means a significant or substantial *physical* injury." (Italics added.) Appellant asserts that the instructional error was exacerbated by the prosecutor's closing argument, "[t]he upshot" of which "was to make the jurors uncomfortable . . . and instill a sense of distaste for the abortion process." "T]he prosecutor referred to the 'sad' and 'hard' decision to have an abortion, and then described the aborted fetus . . . ."

"A defendant challenging an instruction as being subject to erroneous interpretation by the jury must demonstrate a reasonable likelihood that the jury understood the instruction in the way asserted by the defendant. [Citations.]" (*People v. Cross*, *supra*, 45 Cal.4th at pp. 67-68.) "[W]e are obliged to consider the effect and import of the court's jury instructions as a whole. [Citations.]" (*People v. Regalado* (2000) 78 Cal.App.4th 1056, 1061-1062.) Viewed as a whole, the jury instruction on great bodily injury was not reasonably likely to have misled the jury into believing that such injury can be proved by psychological or emotional trauma. The instruction provided, "*Great bodily injury* means significant or substantial *physical* injury." (First italics in original, second italics added.)

The prosecutor's argument about the abortion process was not contrary to the jury instruction. Even if it were, we would presume that the jury followed the instruction: "'When argument runs counter to instructions given a jury, we will ordinarily conclude that the jury followed the latter and disregarded the former, for "[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade." [Citation.]' [Citation.]" (*People v. Centeno* (2014) 60 Cal.4th 659, 676.) The court instructed the jury, "You must follow the law as I explain it to you, even if you disagree

4

with it.  If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions."

Appellant faults the prosecutor for telling the jury that "the very fact of pregnancy 'constitutes great bodily injury' as a 'done' deal."  The prosecutor said:  "It is *the People's position* that the pregnancy, in and of itself, notwithstanding anything that happens after that, constitutes great bodily injury.  Done.  You get that girl pregnant, that is great bodily injury.  Done.  That is *the People's position* here.  You don't need to go into the circumstances and effects."  (Italics added.)  Appellant claims that "the prosecutor's argument misstated the law" because "pregnancy in and of itself does not constitute great bodily injury as a matter of law."  (Bold and capitalization omitted.)  In *People v. Cross*, *supra*, 45 Cal.4th at p. 66, our Supreme Court declined to decide "whether every pregnancy resulting from unlawful sexual conduct, forcible or otherwise, will invariably support a factual determination that the victim has suffered a significant or substantial injury, within the language of section 12022.7."

The prosecutor did not misstate the law.  He made clear that he was stating "the People's position" that the impregnation by forcible rape of 13-year-old L.N. constituted the infliction of great bodily injury.  "Closing argument presents a legitimate opportunity to 'argue all reasonable inferences from evidence in the record.'  [Citation.]" (*People v. Bolton* (1979) 23 Cal.3d 208, 212.)  The "People's position" was a reasonable inference.

### *Admission of Evidence of Appellant's*
### *Prior Uncharged Sexual Misconduct*

Appellant maintains that the trial court abused its discretion in admitting evidence of his prior uncharged sexual misconduct involving Angel N.  The prosecutor argued that the evidence was relevant to show motive, intent, common design or plan, propensity, and to corroborate L.N.'s testimony.  In a pretrial motion in limine, the prosecutor described the evidence as follows:  Appellant was married to and was residing

5

with Angel N.'s mother.[2]  In March 2008, when Angel N. was 12 years old, appellant "entered [her] bedroom, took off her clothing while she was sleeping and touched her breasts.  When she moved, [appellant] left the room. . . .[3]  [¶]  A week later, [appellant] again entered Angel N.'s bedroom while she was asleep.  Angel N. was awakened by [appellant] digitally penetrating her.  [Appellant] left the room but returned and again digitally penetrated her.  She was too scared to move . . . ."[4]  The prosecutor noted that appellant "was arrested and subsequently pled no contest to felony False Imprisonment," for which he was sentenced to prison for two years.  The jury was not informed of appellant's conviction.

At the hearing on the motion in limine, defense counsel conceded that the evidence was admissible to show propensity under Evidence Code section 1108: "[T]here's nothing I can do about it coming in under 1108.  It appears to satisfy the requirements of 1108."  Defense counsel also conceded that the evidence was admissible under Evidence Code section 1101, subdivision (b), but protested that "it seems cumulative for it to come in the second time under 1101(b)."  The trial court ruled that the evidence was admissible under sections 1108 and 1101, subdivision (b).  As to the latter section, the evidence was admissible to show motive, intent, knowledge, and common plan.  Since defense counsel conceded that the evidence was admissible, appellant has forfeited his contention that the trial court abused its discretion.  (*People v. Abel* (2012) 53 Cal.4th 891, 924.)

Appellant claims that he was denied his Sixth Amendment right to effective assistance of counsel.  The standard for evaluating this claim is set forth in *Strickland v.*

---

[2] Angel N. testified that appellant was her stepfather.

[3] Angel N. testified that she "just laid there" because she "was in shock" and "was scared."

[4] Angel N. testified:  "I was really mad, but I didn't move, and I was just really scared, and . . . I didn't want to like scream or anything because I didn't want to wake up my siblings because they were in the same room, so I just laid there."  Appellant had his fingers inside her vagina "[f]or about a couple minutes."

*Washington* (1984) 466 U.S. 668, 687 [104 S.Ct. 2052, 80 L.Ed.2d 674]: "First, [appellant] must show that counsel's performance was deficient. . . . Second, [appellant] must show that the deficient performance prejudiced the defense."

To establish deficient performance, appellant must show that counsel's "performance fell below an objective standard of reasonableness under prevailing professional norms." (*In re Cudjo* (1999) 20 Cal.4th 673, 687.) "Counsel is not required to proffer futile objections. [Citation.]" (*People v. Anderson* (2001) 25 Cal.4th 543, 587.) Reasonable counsel could have concluded that it would have been futile to object that the uncharged sexual misconduct was inadmissible under Evidence Code section 1108. This section "'authorizes the admission of evidence of a prior sexual offense to establish the defendant's propensity to commit a sexual offense, subject to exclusion under Evidence Code section 352.' [Citations.] . . . [¶] . . . To be admissible under section 1108, 'the probative value of the evidence of uncharged crimes "must be substantial and must not be largely outweighed by the probability that its admission would create a serious danger of undue prejudice, of confusing the issues, or of misleading the jury." [Citations.]' [Citation.] 'The principal factor affecting the probative value of an uncharged act is its similarity to the charged offense.'" (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1273-1274.) Given the substantial similarities between the charged and uncharged offenses in the instant case, an objection to the admission of the uncharged offenses "would probably have been futile." (*People v. Memro* (1996) 11 Cal. 4th 786, 834.)

In any event, appellant was not prejudiced by counsel's failure to object. To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694.) We do not lack confidence in the outcome. Disregarding the uncharged offenses, the evidence against appellant is still overwhelming.

*Trial Judge's Refusal to Disqualify Himself*

The prosecutor and the trial judge, Michael J. Carrozzo, had been friends when they both worked in the Santa Barbara District Attorney's Office before the judge's appointment to the bench in June 2014.[5] They played golf together. "For a period of time [Judge Carrozzo] was assigned the office next" to the prosecutor's office. The prosecutor spoke at the judge's "enrobing ceremony." Since the judge's appointment, they have not played golf or socialized.

On January 13, 2015, approximately two months before the trial began, the prosecutor disclosed in open court that he and Judge Carrozzo remained friends and "periodically go to social functions." The judge stated, "I don't believe there's any disclosure to be made on . . . my relationship with this attorney. . . . I've seen him at other social events that were open to the general public, but I don't have any personal or private relationship with him at the present time."

In a letter dated February 22, 2015, and addressed "To whom it may concern," Judge Carrozzo recommended the prosecutor for a judicial appointment. He wrote that the prosecutor is "the most qualified candidate in Santa Barbara County for a judicial appointment." The judge said he had "known [the prosecutor] for over seven years both personally and professionally."

Trial testimony began on March 19, 2015. The next day, Judge Carrozzo disclosed to defense counsel that he had written the letter of recommendation. His disclosure was triggered by a March 19, 2015 email from the presiding judge "indicating that the CJA [California Judges Association] hotline opined that, if a judge writes a letter of recommendation for a judicial applicant, the judge has a duty to disclose that support when the lawyer appears before the judge."

Based on the letter, appellant filed a motion to disqualify Judge Carrozzo. The judge struck appellant's statement of disqualification because "on its face [it] discloses no legal grounds for disqualification."

---

[5] Pursuant to appellant's request, we take judicial notice that Judge Carrozzo was appointed on June 18, 2014. (Evid. Code, §§ 452, subds. (c), (h), 459.)

On April 3, 2015, appellant filed a petition for a writ of mandate directing Judge Carrozzo to vacate his order striking the statement of disqualification. On April 6, 2015, we summarily denied the petition.

Appellant argues that Judge Carrozzo's "refusal to disqualify [him]self violated both appellant's state statutory right to disqualification and his federal due process right to a fair trial . . . ." (Bold and capitalization omitted.) Appellant continues, "[T]he judge's support of the prosecutor [in seeking] judicial office very close in time to this trial and their close social relationship demonstrate a probability of actual bias on the part of the judge that is too high to be constitutionally tolerable."

The People counter that appellant "is precluded from raising his statutory claim on appeal." We agree. Code of Civil Procedure section 170.3, subdivision (d) provides, "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought only by the parties to the proceeding." (See also *People v. Freeman* (2010) 47 Cal.4th 993, 1000 ["'Under our statutory scheme, a petition for writ of mandate is the *exclusive* method for obtaining review of a denial of a judicial disqualification motion'"]; *People v. Brown* (1993) 6 Cal.4th 322, 334 ["Section 170.3(d) forecloses appeal of a claim that a *statutory* motion for disqualification . . . was erroneously denied"].)

But because appellant "(i) sought writ relief as required by section 170.3(d) [citation], and (ii) writ relief was summarily denied, he may assert on appeal . . . a constitutional due process claim that the judge who presided over his [trial] was not impartial. [Citations.]" (*People v. Brown*, *supra*, 6 Cal.4th at p. 336, fn. omitted.) "Accordingly, we address the issue of judicial disqualification solely under the rubric of due process. [Citation.]" (*People v. Freeman*, *supra*, 47 Cal.4th at p. 1000.)

"[T]he United States Supreme Court's due process case law focuses on actual bias. This does not mean that actual bias must be proven to establish a due process violation. Rather, consistent with its concern that due process guarantees an impartial adjudicator, the court has focused on those circumstances where, even if actual bias is not

9

demonstrated, the probability of bias on the part of a judge is so great as to become 'constitutionally intolerable.' [Citation.] The standard is an objective one." (*People v. Freeman*, *supra*, 47 Cal.4th at p. 1001.) "[T]he due process clause should not be routinely invoked as a ground for judicial disqualification. Rather, it is the exceptional case presenting extreme facts where a due process violation will be found. [Citation.]" (*Id*., at p. 1005.)

"[T]he facts here [do not] present the kind of extreme case that implicates the due process clause." (*People v. Freeman*, *supra*, 47 Cal.4th at p. 1005.) "Because virtually all judges are drawn from the ranks of the legal profession, [the] prior relationship[] [between the prosecutor and Judge Carrozzo is] neither unusual nor dispositive. [Citation.]" (*People v. Carter* (2005) 36 Cal.4th 1215, 1243.) Judge Carrozzo's letter of recommendation does not show that "the probability of bias on the part of [the] judge [was] so great as to become 'constitutionally intolerable.'" (*People v. Freeman*, *supra*, 47 Cal.4th at p. 1001.) "[T]he proper performance of judicial duties does not require a judge to withdraw from society and live an ascetic, antiseptic and socially sterile life." (*United Farm Workers of America v. Superior Court* (1985) 170 Cal.App.3d 97, 100.)

*Cruel and/or Unusual Punishment*

For the forcible rape of a 13-year old child with great bodily injury, appellant was sentenced to life imprisonment without the possibility of parole. Appellant contends that his sentence constitutes cruel and/or unusual punishment under the Eighth Amendment of the United States Constitution and article 1, section 17 of the California Constitution. "Under the Eighth Amendment of the United States Constitution, 'the courts examine whether a punishment is grossly disproportionate to the crime.' [Citation.] 'Under the California Constitution, a sentence is cruel or unusual if it is so disproportionate to the crime committed that it shocks the conscience and offends fundamental notions of human dignity.' [Citation.]" (*People v. Johnson* (2013) 221 Cal.App.4th 623, 636.)

10

"[A]ppellant's sentence is not disproportionate to his crime. '*Harmelin v. Michigan* (1991) 501 U.S. 957 [115 L.Ed.2d 836, 111 S.Ct. 2680], . . . upheld a sentence of LWOP [(life without the possibility of parole)] for possession of 672 grams of cocaine, a serious crime, but [far] less heinous than' the crime[] committed by appellant. [Citation.]" (*People v. Johnson*, *supra*, 221 Cal.App.4th at p. 636.) The presentence probation report concluded that appellant "is a sexual predator who has no regard for his victims, nor for the impact of his conduct on the families of his victims."

*Disposition*

The judgment is affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

Michael J. Carrozzo, Judge

Superior Court County of Santa Barbara

_____


Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Daniel C. Chang, Deputy Attorney General, for Plaintiff and Respondent.