Filed 12/1/20  P. v. Antonelli CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TIMOTHY PATRIC ANTONELLI,<br><br>    Defendant and Appellant. | 2d Crim. No. B299749<br>(Super. Ct. No. CR27515)<br>(Ventura County) |

In the companion case of (*People v. Johnson* and *People v. Baker-Riley* (2020) __ Cal.App.5th __ [2020 Cal.App. LEXIS 1060) (*Johnson/Baker-Riley*) we held that the provocative act murder theory survives Senate Bill No. 1437 (2017-2018 Reg. Sess.) (S.B. 1437) and no evidentiary hearing was required.  In the instant case, we again so hold.  What is different here, is that there was a full evidentiary hearing.  Thus, in appellate parlance, this appeal has now morphed into a "substantial evidence" case.  And substantial evidence supports the trial court's express "major participant" and "reckless indifference" findings.

Timothy Patric Antonelli appeals a postjudgment order denying his petition to vacate his 1991 first degree murder conviction and 25-year-to-life state prison sentence. (Pen. Code, § 1170.95, subd. (d)(3).)[1] At the hearing the prosecution proved beyond a reasonable doubt, that petitioner was ineligible for resentencing. (§ 1170.95, subd. (d)(3).) The trial court denied the petition factually finding that petitioner was a major participant in a home invasion robbery who acted with reckless indifference to human life. (§189, subd. (e)(3).) We affirm.

In 1991, a jury convicted petitioner of, inter alia, provocative act murder after his accomplice was shot and killed by a victim during a home invasion robbery. Petitioner concedes in his opening brief: "The [trial] court did not instruct on felony-murder."[2] We affirmed the judgment of conviction in 1993 with sentence modifications. (*People v. Antonelli* (Sept. 28, 1993, B059426) [nonpub. opn.].)

S.B. 1437, now permits defendants convicted of murder pursuant to the felony murder rule or natural and probable consequences doctrine to petition for resentencing based on changes to Penal Code sections 188 and 189. Section 188, subdivision (a)(3) was amended to provide that malice, the quintessential element for murder, "shall not be imputed to a person based solely on his or her participation in a crime." (See

_____

[1] All further statutory references are to the Penal Code.

[2] A provocative act murder case necessarily involves at least three people: the perpetrator of the underlying offense, an accomplice, and a victim of their crime. (*People v. Gonzalez* (2012) 54 Cal.4th 643, 654 (*Gonzalez*).)

*People v. Munoz* (2019) 39 Cal.App.5th 738, 749 [S.B. 1437 "'redefined "malice" in section 188'"].)

In *People v. Lee* (2020) 49 Cal.App.5th 254 (*Lee*), review granted July 15, 2020, S262459, our colleagues in Division One held that provocative act murder survives S.B. 1437. Here, petitioner and two armed accomplices committed a home invasion robbery, during which a victim fought back and killed one accomplice. We agree with the rule and rationale of *Lee*. And, based thereon, we affirm.

But, there is a separate and distinct reason why we affirm. Even if petitioner had been convicted of felony murder and/or the natural and probable consequences theory, and even if provocative act murder is a "subset" of these two theories, appellant would still not prevail. As we shall explain, it took no leap in logic for the trial court to find that petitioner was a major participant in the robbery and acted with reckless indifference to human life.

*Factual and Procedural History*

After issuing an order to show cause (§ 1170.95, subds. (c) & (d)) the superior court conducted an evidentiary hearing. The following evidence was introduced:

On January 1, 1991, Phil Shine called Leslie Phipps in the early morning hours and asked Phipps to come to a New Year's eve party at Melody Hatcher's and Paul Blair's house in Ojai. Shine asked her to bring marijuana. Phipps declined but told her roommate, petitioner, about the party. Petitioner called Shine 20 minutes later, asked for directions, and said he would bring marijuana.

Petitioner and Frank Stoddard hatched a plan to rob everyone at the party. Phipps overheard Stoddard say something

about two guns and splitting something three ways. Stoddard told appellant they would "'pick up Ronnie [Brown] and go on up there.'" Brown told his roommate, Shane Allen, he was going with Stoddard and petitioner to "'hit a party in Ojai.'" Petitioner and Stoddard picked up Ron Brown. Stoddard and Brown armed themselves with a .30-06 semiautomatic rifle and a .22 semiautomatic pistol.

Petitioner knocked on the front door and looked to his right outside the doorway as Melody Hatcher opened the door. Wearing ski masks, Stoddard and Brown burst into the house brandishing the rifle and pistol. Petitioner cleared the doorway, threw Hatcher down on a couch and got down next to her. Party guests Billie Joe Gregory, August Howard and John Schommer were sitting at the dining room table. Scott Blair was in the bedroom.

Shouting "'police, everybody down,'" Stoddard and Brown herded everyone into the living room and demanded money, drugs, and jewelry. Stoddard ordered John Schommer to turn over his valuables. Schommer had nothing. Stoddard yelled "'then you're just going to die'" and repeatedly kicked Schommer in the head.

Fearing for his life, Gregory turned over his wallet with five dollars in it. Stoddard hit Gregory in the head with the rifle, knocking him unconscious. Angry about the paucity of the take, Stoddard yelled "'if this is all the money you guys could come up with, we'll just go over here [and] blow this fucking bitch's [Hatcher's] brains out.'" Stoddard dragged Hatcher by the hair into the kitchen.

August Howard tried to rescue Hatcher but was shot in the eye by Stoddard. Shrine thought they were all going to die

and grabbed for Stoddard's pistol. A melee ensued. It was petitioner and his armed cohorts versus six or more angry partygoers.

Brown hit Shine with the rifle as Stoddard stood close by with the pistol. Shine fought back and grabbed the rifle and pistol barrels, as Brown bit down on Scott Blair's thumb.

Gregory jumped into the fray, grabbed the rifle, and clubbed Brown with it until Brown released Blair's thumb. Brown and Schommer fought one another until Brown held a buck knife to Schommer's neck. Fearing that Schommer would be killed, Gregory fired two shots, killing Brown. Someone called 911. The gun shots were so loud they could be heard on the 911 dispatcher tape.

The fighting continued. Shrine and Stoddard struggled to get control of the .22 pistol. Gregory shot a round at Stoddard, ran out of bullets, and beat Stoddard with the rifle stock until it broke. Stoddard let go of the pistol and ran. A white Ford Escort was outside the house with the engine running. As Gregory ran toward it, petitioner drove away and left Stoddard behind.

### The Subset Theory

Petitioner claims that a provocative act murder is a subset of the felony murder doctrine and, like the felony murder doctrine, was "eliminated" by S.B. 1437. The argument is based on the theory that petitioner cannot be convicted of felony-murder because he harbored no malice to kill his accomplice, Brown. That is the holding of *People v. Washington* (1965) 62 Cal.2d 777 (*Washington*) which predates S.B. 1437 and focuses on a well-known exception to the felony-murder rule. Malice will not be imputed to the robber if the killing is committed by the victim

5

rather than the robber or his accomplice. (*Id*. at p 781.) "The provocative act doctrine is not so limited. Under the provocative act doctrine, when the perpetrator of a crime maliciously commits an act that is likely to result in death, and the victim kills in reasonable response to that act, the perpetrator is guilty of murder. [Citations.]" (*Gonzalez, supra,* 54 Cal.4th at p. 655.) "'In such a case, the killing is attributable, not merely to the commission of a felony, but to the intentional act of the defendant or his accomplice committed with conscious disregard for life.' [Citation.]" (*Ibid*.)

Petitioner argues that S.B. 1437 eliminates the provocative act murder doctrine. But S.B. 1437 does not use the phrase "provocative act murder." We held to the contrary in *Johnson/Baker-Riley*, and pointed out that we do not add language and/or unarticulated theories to a statue. S.B. 1437 says it was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, *or was not a major participant in the underlying felony who acted with reckless indifference to human life*." (Stats. 2018, ch. 1015, § 1, subd. (f), italics added; see *People v. Martinez* (2019) 31 Cal.App.5th 719, 723.) S.B. 1437 does this by amending section 188 to provide that, except as stated in section 189, subdivision (e) all principals to murder must act with express or implied malice to be convicted of murder. (Stats. 2018, ch. 1015, § 2.) "Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) As amended, section 189, subdivision (e)(3) provides that if the defendant is not the actual killer or a direct aider and abettor, the defendant

6

must be a major participant in the underlying felony and act with reckless indifference to human life to be liable for murder. (Stats. 2018, ch. 1015, § 3.)

*The S.B. 1437 Allows a Murder Conviction Where*
*the Defendant is a Major Participant and Acts With*
*Reckless Indifference to Human Life*

Petitioner does not argue that he was convicted of murder based on the reasonable and probable consequences doctrine theory. But he does argue that he is automatically entitled to S.B. 1437 resentencing. That is not determinative. Regardless of what murder theory was used to convict before the enactment of S.B. 1437, a defendant is not eligible for resentencing if he or she was a major participant in the underlying dangerous felony and acted with reckless indifference to human life. (§§ 189, subd. (e)(3), 1170.95, subd. (d)(2).) This equates to malice, and more specifically implied malice. "Malice is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (§ 188, subd. (a)(2); see CALCRIM No. 522 ["provocation does not apply to a prosecution under a theory of felony murder"].)

Petitioner claims that a provocative act murder is a combination of felony murder and natural and probable consequence murder. A similar argument was rejected in *Lee*, *supra*, 49 Cal.App.5th at page 266. Provocative act murder is not a subset of either felony murder or natural and probable consequences murder because a provocative act murder requires proof of malice. (*Ibid*.) The provocative act murder requires that "the defendant personally harbor[] the mental state of malice, and either the defendant or an accomplice intentionally commit[]

7

a provocative act that proximately caused an unlawful killing. [Citations.]" (*Gonzalez, supra,* 54 Cal.4th at p. 655.)

Petitioner was tried and convicted for provocative act murder based on the 1991 version of CALJIC No. 8.12 which instructed on implied malice and told the jury that the provocative act can be committed by defendant or a surviving accomplice. He argues that S.B. 1437 changes the law of provocative act murder liability and now requires that the robber-defendant commit the provocative act by brandishing a firearm, as was the case in *Lee, supra,* 49 Cal.App.5th 254.

A major participant to a home invasion robbery doesn't have to wield a firearm or even be at the crime scene. We so held in *People v. Johnson* (2013) 221 Cal.App.4th 623, 627: "The 'mastermind' of an armed home-invasion robbery who sends his accomplices to do his bidding can be convicted of first degree murder if one of his accomplices engages in provocative conduct and the victim kills in reasonable response to that conduct." (*Ibid.*)

In affirming petitioner's conviction in 1993, we stated: "The jury determined that [petitioner] planned an armed robbery. [He was the "mastermind."] He knew that his accomplices were carrying weapons to the robbery site, that multiple persons would be victimized, that the guns would naturally and probably would be used to assault the victims. The jury could also [draw the rational inference] that victim resistance to these aggravated assaults would be likely, especially where, as here, the victims outnumbered the robbers."

All of this makes petitioner a major participant who acted with reckless indifference to human life. (See, e.g., *In re Bennett* (2018) 26 Cal.App.5th 1002, 1018 [major participant is

8

one of the more important members of the group].) Petitioner conceived and planned the home invasion robbery, drove his comrades with firearms to the house, facilitated the entry, and threw the party host, Hatcher, on the couch before she was dragged into the kitchen and threatened with her life. It set in motion a horrific home invasion. Stoddard and Brown beat the victims with a rifle, knocked Gregory unconscious, shot Howard in the eye, and nearly bit off Blair's thumb. It was highly likely that the victims would fight back and someone would be killed.

The jury was instructed there was no murder liability if Brown's "provocative conduct alone" got him killed. (See *Washington, supra,* 62 Cal.2d at p. 781; *Gonzalez*, *supra*, 54 Cal.4th at p. 654.) But there was a second accomplice, Stoddard, and he was also a major participant. We observe if not for petitioner, there would be no home invasion robbery, and no death.

*Banks and Clark*

Taking his cue from a line of death penalty cases, petitioner claims that the prosecution failed to prove that he acted with reckless indifference to human life for purposes of S.B. 1437. Being a major participant in a dangerous felony and acting with reckless indifference to human life often overlap. (*People v. Clark* (2016) 63 Cal.4th 522, 614-615 (*Clark)*.) In *People v. Banks* (2015) 61 Cal.4th 788, our Supreme court set forth a non-exclusive list of factors in determining whether the defendant was a major participant: defendant's role in planning the criminal enterprise; his role in supplying or using lethal weapons; his awareness of the dangers posed by the crime; his presence at the scene; his actions or inactions in the death; and what defendant did after lethal force was used. (*Id*. at p. 803.) "No one

9

of these considerations is necessary, nor is any one of them necessarily sufficient. All may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major' [citations]." (*Ibid.*; see also *In re Scoggins* (2020) 9 Cal.5th 667, 677.)

In *Clark, supra*, 63 Cal.4th 522, our Supreme Court described the reckless indifference to human life factors: defendant's knowledge that weapons would be used; how the weapons were used; the number of weapons used; defendant's proximity to the crime, his opportunity to stop the killing or aid the victims; the duration of the crime; defendant's knowledge of the killer's (accomplice's) propensity to kill; and defendant's efforts to minimize the possibility of violence during the crime. (*Id.* at pp. 616-623; see *In re Taylor* (2019) 34 Cal.App.5th 543, 546 [*Banks* and *Clark* "clarified" what it means for an aiding and abetting defendant to be a major participant who acts with reckless indifference to human life].)[3] Reckless indifference "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Clark, supra*, at p. 617.)

The evidence and the extant case law was considered by the trial judge at the S.B. 1437 hearing. The trial court sits as a trier of fact at a S.B. 1437 evidentiary hearing. It factually

---

[3] The *Banks* and *Clark* factors are derived from the United States Supreme Court's death penalty opinions in *Tison v. Arizona* (1987) 481 U.S. 137 and *Enmund v. Florida* (1982) 458 U.S. 782. (See *In re Taylor, supra*, 34 Cal.App.5th at pp. 551-554.)

found that petitioner was a major participant and acted with a reckless indifference to human life. This factual finding is subject to review by the well-settled substantial evidence rule. (See, e.g., *People v. Morales* (2020) 10 Cal.5th 76, 88.) Substantial evidence supports the trial court's ruling.

*Conclusion*

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

YEGAN J.

I concur:

GILBERT, P. J.

11

TANGEMAN, J., Concurring:

The majority hold that "the provocative act murder theory survives Senate Bill No. 1437 . . . and no evidentiary hearing [is] required." (Maj. opn. *ante*, at. p. 1.) They accordingly affirm the trial court's order denying Senate Bill No. 1437 (S.B. 1437) relief to appellant. Because I question that underlying premise but agree with the result reached here, I concur.

An important issue presented by this case is whether provocative act murder liability attaches after passage of S.B. 1437 where, as here, the defendant did not commit the provocative act. Appellant contends it does not. This precise question has not been resolved. (See *People v. Lee* (2020) 49 Cal.App.5th 254, review granted July 15, 2020, S262459 (*Lee*) [S.B. 1437 not applicable to provocative act murder conviction of defendant who committed the provocative act]; cf. CALJIC No. 8.12 and CALCRIM No. 561.)

The jury here was instructed that appellant is guilty of murder if "a perpetrator of the crime" "intentionally committed a provocative act" "with knowledge of the danger to and with conscious disregard for human life." (Former CALJIC No. 8.12.) Thus, appellant could have been convicted based solely on the actions, and the implied malice, of his accomplice, Stoddard. The question thus arises whether appellant could now be convicted of murder under the amended statutes pursuant to the provocative act theory if he was (1) not the killer, (2) had no intent to kill, and (3) was not a major participant who acted with reckless indifference to human life.

Section 1 of S.B. 1437 provides in subdivision (f): "It is necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to

1

ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1.) S.B. 1437 does not mention provocative act murder, but Penal Code section 188[1] was amended to broadly provide that except as stated in section 189, subdivision (e), *all* principals to murder must act with express or implied malice to be convicted of murder. (Stats. 2018, ch. 1015, § 2.) And under current law, "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Moreover, section 189, subdivision (e)(3) now provides that if the defendant was not (like appellant) the actual killer or one who acted with intent to kill, then the defendant must have been a major participant in the underlying felony who acted with reckless indifference to human life to incur murder liability. These statutory amendments are incongruent with the rule that murder liability continues for actors who are neither present at, nor participating in, a melee in which an accomplice is unexpectedly killed by a robbery victim.

We need not answer that question because the evidence clearly meets the applicable standard even if S.B. 1437 applies, as appellant contends. The facts of this case are similar to those in *People v. Bascomb* (2020) 55 Cal.App.5th 1077 (*Bascomb*), which involved two codefendants who planned and executed a midday home invasion robbery of a drug dealer. After barging into the dealer's home with guns, they forced a victim to the ground and brandished their weapons "to threaten the residents and keep them pinned down throughout the duration of

---

[1] Further statutory references are to the Penal Code.

the robbery." (*Id*. at p. 1089.) The appellant's accomplice accosted the murder victim in the adjoining bedroom and killed him. They then fled without rendering aid. On these facts, the court concluded that "this sort of conduct easily meets our state's standard for what constitutes being a major participant who acted with reckless indifference to human life." (*Ibid*.)

In reaching this conclusion, the *Bascomb* court contrasted "'garden-variety'" robberies such as those involving convenience stores or persons on the street, where "'resistance, if any, would be slight, and armed resistance likely nonexistent,'" and "'the planned, armed robbery of a known drug dealer at his residence.'" (*Bascomb*, *supra*, 55 Cal.App.5th at pp. 1087, 1090.) As in *Bascomb*, we are confronted here with the latter, not the former. The same result follows here.

Appellant cites as mitigating factors that he was unarmed and fled the scene at some unknown time, so he could not have restrained his accomplices or rendered aid after his departure. But he planned the home invasion for the early morning hours when multiple victims were known to be present and likely intoxicated, he knew his two accomplices were armed, and he assisted the robbery by pinning one victim to the ground while his cohorts threatened and pistol-whipped the other victims. This conduct is nearly identical to that in *Bascomb* and is sufficient to establish reckless indifference to human life.

Accordingly, I join in affirming the postjudgment order.

<u>NOT TO BE PUBLISHED.</u>

TANGEMAN, J.

Gilbert A. Romero, Judge

Superior Court County of Ventura

_____

Todd W. Howeth, Public Defender, William M. Quest, Snr. Deputy Public Defender, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S. Lee, Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.