Filed 9/19/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MIGUEL VENANCIO,<br><br>    Defendant and Appellant. | B338191<br><br>Los Angeles County<br>Super. Ct. No.<br>XCNBA334935 |

APPEAL from an order of the Superior Court of Los Angeles County, George G. Lomeli, Judge.  Affirmed.

Bess Stiffelman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Miguel Venancio pleaded no contest to first degree murder and the court sentenced him to 25 years to life in prison. The murder occurred while Venancio and his accomplices were committing a home invasion robbery. During the robbery, Venancio's accomplices got into a gun battle with a neighbor. One of Venancio's accomplices was shot and killed, but the shooter's identity is unknown. The People prosecuted Venancio under a provocative act theory of murder, and a magistrate held him to answer.

In 2022, Venancio filed a petition for resentencing relief under Penal Code section 1172.6.[1] The People opposed the petition, arguing Venancio is ineligible for relief as a matter of law because provocative act murder remains a valid theory under current law. The superior court issued an order to show cause and held an evidentiary hearing on the petition. After considering the evidence, the court concluded Venancio is not entitled to relief and denied his petition.

On appeal, Venancio argues there is insufficient evidence showing he is guilty of murder under a currently valid theory. We do not consider that issue because we conclude Venancio failed to make a prima facie case for relief. The record of conviction shows Venancio was convicted of murder under a provocative act theory. Five months before his conviction, the California Supreme Court decided *People v. Concha* (2009) 47 Cal.4th 653, 663–664 (*Concha*), which held a defendant must personally harbor malice to be guilty of murder under a provocative act theory. Because Venancio entered his plea and was convicted after the court decided *Concha*, he necessarily

---

[1] Undesignated statutory references are to the Penal Code.

was convicted under a theory of murder that required him personally to harbor malice. Because that theory of murder remains valid, Venancio is ineligible for section 1172.6 relief as a matter of law. Therefore, we affirm the court's denial of his petition.

## FACTS AND PROCEDURAL BACKGROUND

1. ***The charges and preliminary hearing***

The People charged Venancio with murder (§ 187), six counts of home invasion robbery (§ 211), first degree burglary (§ 459), and attempted murder (§§ 664, 187). They alleged special circumstances that the murder was committed while Venancio was engaged in the commission of a robbery and a burglary. (§ 190.2, subd. (a)(17).) The People also alleged various firearm and gang enhancements.

A magistrate held a preliminary hearing in May 2008. The People called eight witnesses to testify, including Sergio Uriarte.

Sergio testified he was at home with his family—his wife, mother, brother, seven-year-old child, and two-year-old child— the evening of January 10, 2008. Around 8:00 p.m., two men walked into the house through the front door and pulled out guns. The men's faces were visible, and Sergio later identified one of them as Jesse Ruiz.

Three or four more men came into the house through the front door, each carrying a gun. Unlike the first two men, these men wore either ski masks or bandannas covering their faces. The men ripped the cord off the family's landline phone and collected all the cell phones in the house.

Someone asked Sergio, " 'Where's the safe at?' " Sergio replied that he does not have a safe, and one of the men hit

3

Sergio on the head with a gun. The men forced Sergio into a room where his wife—Ana Perez—was lying in bed. Ana was pregnant at the time.

Ana testified that the men severely beat Sergio until he appeared to lose consciousness. One of the men suggested they shoot Sergio " 'at the feet.' " Ana held her children close to her. One child was crying and asked why the men were beating his father.

Ana identified Venancio as one of the armed intruders. She said she recognized a birthmark on his cheek. Venancio was wearing a face covering during the robbery, but his birthmark was visible at times. The police had previously shown Ana a picture of Venancio, but she was nervous and did not recognize him. However, she recognized him in person at the preliminary hearing.

Sergio's mother—Eugenia Uriarte—testified that one of the intruders grabbed the youngest child by the arm and threw him toward the other side of the room. The men threatened to kill Sergio, and they told Eugenia they would "put a bullet through" her if she was not quiet. Sergio's brother covered Eugenia's mouth so she would not make noise.

Some of the men held the family members at gunpoint while the others "rummag[ed]" through the house. The man who was watching Ana was wearing surgical gloves. The men took coins, collectibles, a wallet, a television, and $15,000 in cash. They also took the family's jewelry, including jewelry the children were wearing. The men collected the items in large trash bags.

Eugenia's nephew—Luis Gonzaga Perez—testified that he lived with his family in a separate house on the same property. Luis's nine-year-old son had been in the front house earlier in

the evening.  Luis became concerned when his son did not return home on time and Eugenia was not answering her phone.  He became more concerned when his wife said she saw someone in a car in an alley next to the house.

Luis walked outside carrying a gun.  He saw someone sitting in a Honda Accord parked in the alley.  Luis could not see the man's face.  The man apparently noticed Luis and asked him, " 'Do you know where Maria lives?' "  As Luis walked around the car to check the license plate, the driver started the car and drove away.

Luis continued toward the front house and saw a man in a ski mask.  The man left the house and got into a car stopped in the middle of the street.  It was the same car that had been parked in the alley.  Another car was stopped directly behind it, also in the middle of the street.

Luis called out for Sergio.  An unfamiliar voice responded, claiming to be a friend of the family and inviting Luis to come inside the house.  Luis watched as three or four men left the house.  One of the men had a gun.

Luis pulled out his gun and told the men not to move.  A man wearing a mask cursed and fired two or three shots at Luis.  Luis shot back and took cover behind a car.  Someone near the front door started shooting at Luis, and bullets were coming at him from several directions.  One of the bullets passed through Luis's pants and bruised his leg.  Luis returned fire.

Angelina Cervantes testified that she witnessed some of the shootout.  Cervantes was sitting in her car—which was parked outside the house—when she noticed a person in a Honda stopped in the middle of the street.  She then saw a man in a ski mask walk out of the house holding a bag.

5

Cervantes got out of her car and walked in front of the Honda to get to the apartment building across the street. After Cervantes passed the Honda, it drove down the street, about a block, before circling back toward the house.

Cervantes took the elevator up to the fourth floor of the apartment building. She heard gunshots just as she walked out of the elevator. Cervantes looked outside and saw two people firing guns. One shooter was behind her parked car, and the other was in the front yard of the house across the street.

Jesse Ruiz—whom Sergio identified as one of the unmasked intruders—was struck by a bullet in the chest during the shootout. Venancio drove Ruiz to a hospital in a Honda matching the description of the vehicle Luis had seen in the alley. An officer looked inside the car and saw a latex glove and a ski mask. Ruiz died from his wounds. The police arrested Venancio.

Police found bullet casings "all over the place" in the general vicinity of the house. Most of the casings were in the yard, near the front door, or close to the area where Luis had taken cover behind a car. The police also found casings in the street on the side across from the house.

After hearing the evidence, the magistrate noted it appeared the decedent died from a bullet fired by Luis. The prosecutor corrected the magistrate, noting we "actually don't know" if the fatal shot "was from one of the guns recovered from the victims, or if it was from an unknown gun that was never recovered from one of the suspects." She explained the People "won't be able to resolve that" issue because the bullets traveled through Ruiz's body. The prosecutor argued Venancio could still be convicted of murder under a provocative act theory.

Defense counsel responded that the provocative act theory does not apply because it was not foreseeable that an armed neighbor would interrupt the robbery and start a shootout. Defense counsel also argued malice cannot be imputed under a provocative act murder theory.

The magistrate held Venancio to answer on all the charges, as well as the special circumstances and enhancement allegations.[2] As to the murder count, the magistrate found the People presented sufficient evidence under a provocative act theory. The magistrate explained it was foreseeable and highly probable that the gunmen's actions "would begin a chain of events resulting in someone's death."

### 2. *The plea, conviction, and sentence*

In April 2010, Venancio pleaded no contest to a single count of first degree murder. Defense counsel and the prosecutor stipulated to a factual basis for the plea based on the preliminary hearing transcript and police reports. The court found a factual basis and accepted the plea. The court granted the People's motion to dismiss the remaining counts and sentenced Venancio to 25 years to life in prison.

### 3. *Venancio's petition for resentencing*

In January 2022, Venancio filed a petition for resentencing under section 1172.6. Venancio checked a box on the petition stating an information was filed against him that allowed the

---

[2] The People originally alleged firearm enhancements under subdivision (d) of section 12022.53. At the preliminary hearing, the court granted the People's motion to allege firearm enhancements under subdivision (c). The court dismissed the allegations under subdivision (d).

prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine, or another theory under which malice is imputed to a person based solely on that person's participation in a crime. Venancio also checked a box asserting he "could not presently be convicted of murder . . . because of changes" to sections 188 and 189.

The People opposed the petition. The People argued Venancio is ineligible for relief as a matter of law because he was not prosecuted for murder under a theory of felony murder, the natural and probable consequences doctrine, or some other theory under which malice is imputed based solely on participation in a crime. Instead, according to the People, Venancio was prosecuted and convicted of provocative act murder, a theory that requires malice and remains valid after the changes made to sections 188 and 189. The People attached to their opposition the information, a transcript of Venancio's plea, and a transcript of the preliminary hearing.

In a reply to the opposition, Venancio argued the fact that the prosecutor relied on a provocative act theory at the preliminary hearing was not determinative because the People could have pursued other theories at trial. Venancio asserted the evidence presented at the preliminary hearing implicated "the natural and probable consequences doctrine, accomplice liability, felony murder with transferred intent during the escape from a burglary, and provocative act liability." Venancio pointed to evidence showing he was the getaway driver, drove Ruiz to the hospital, was not present during the shootout, and did not fire any shots during the shootout. He noted it also was possible one of his accomplices shot Ruiz. Venancio argued that, even if he were convicted of provocative act murder, it is no longer

a valid theory when applied to a nonprovocateur aider and abettor, like himself.

The court noted Venancio arguably is not entitled to relief as a matter of law because the prosecution did not rely on felony murder or the natural and probable consequences doctrine. However, the court stated it might be necessary to engage in factfinding to determine whether Venancio's liability was based on some other theory involving imputed malice. Therefore, out of an "abundance of caution," the court issued an order to show cause (OSC) and set an evidentiary hearing.

Venancio filed a brief in response to the OSC.[3] He acknowledged that, in *Concha*, the California Supreme Court "made clear that explicit malice [is] required before someone could be found guilty under a provocative act theory of murder." However, Venancio asserted *Concha* did not apply because he was held to answer before the high court issued the decision. Therefore, he said, his plea was "predicated on a now impermissible theory of murder."

Venancio argued he is entitled to resentencing relief because he could not be convicted of provocative act murder under current law. According to Venancio, the People could not prove his guilt because there is no evidence he possessed an intent to kill, committed a provocative act, or aided and abetted a provocative act. He suggested the shooting was the only provocative act that could give rise to liability for murder.

---

[3] The People also filed a brief in response to the OSC. However, the superior court refused to consider the brief because the People filed it the day of the hearing. Accordingly, we do not summarize it.

The court held an evidentiary hearing on May 17, 2024. Neither side presented new evidence at the hearing.

The court denied Venancio's petition after finding he committed a provocative act murder, which remains a valid theory of murder. The court stated Venancio, "like the other cohorts, entered the residence to commit home invasion robbery and was specifically observed as an individual who covered his face to protect his identity, while personally brandishing a firearm." The court determined Venancio and his accomplices committed provocative acts during the robbery by brandishing weapons, assaulting all the inhabitants without regard to age, pistol-whipping one inhabitant, making threats to kill, and engaging in a gun battle. The court found it was "foreseeable that numerous masked gunmen entering the residence and brandishing firearms at the victims could provoke a deadly response," and the "subsequent gun battle that occurred was a highly probable result of the overall incident."

As to Venancio's mental state, the court found he acted with "implied malice when he engaged in the acts he knew were dangerous to human life, did so with a conscious disregard for life, and thereby contributed to the death of co-suspect Jesse Ruiz." The court stated the "facts reflect that the incident appeared to be well prepared and planned," and all the "suspects, including the petitioner, were prepared to deal with any unforeseen contingencies that might occur during the incident." The court noted the "mere fact that the individuals were so heavily armed indicates a[ ] readiness to use the firearms to deal with any resistance that might occur, such as the gun battle that ultimately did occur."

Venancio timely appealed.

10

**DISCUSSION**

Venancio argues the superior court erred in denying his section 1172.6 petition because there is insufficient evidence to show he is guilty of murder under a currently valid theory. The Attorney General responds that we need not consider the sufficiency of the evidence because the record of conviction shows Venancio is ineligible for relief as a matter of law. We agree with the Attorney General.

1. ***Governing law***

Senate Bill No. 1437 (2017–2018 Reg. Sess.) limited the scope of the felony murder rule and eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder. (*People v. Lewis* (2021) 11 Cal.5th 952, 957.) These changes were intended "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1(f); *Lewis*, at p. 967.)

Section 1172.6 creates a procedure for persons convicted of murder under the former law—either following a trial or after accepting a plea offer in lieu of a trial—to be resentenced if they could no longer be convicted of murder because of the changes to the law. (See *People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*); § 1172.6, subd. (a)(2), (3).) Effective January 2022, the Legislature extended resentencing eligibility to individuals convicted of murder on any "other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . ." (§ 1172.6, subd. (a)(1); Senate Bill No. 775 (2021–2022 Reg. Sess.); Stats. 2021, ch. 551, § 2.)

11

A person seeking relief under section 1172.6 begins the resentencing process by filing a petition in the superior court. (§ 1172.6, subd. (a).)  A petition is facially sufficient if it "includes '[a] declaration by petitioner that the petitioner is eligible for relief . . . , based on all the requirements of [section 1172.6] subdivision (a),' the case number and year of the petitioner's conviction, and whether the petitioner seeks counsel . . . . A facially sufficient petition also triggers the People's duty to submit a response and the petitioner's right to submit a reply on the question of whether a prima facie case for relief exists." (*People v. Patton* (2025) 17 Cal.5th 549, 558–559 (*Patton*).)

After the parties have had an opportunity to submit briefs, the superior court must "hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c).)  The prima facie stage is limited, but it is not "simply duplicative of the facial inquiry." (*Patton, supra*, 17 Cal.5th at p. 562.)  The court may not engage in factfinding involving the weighing of evidence or the exercise of discretion.  (*Id.* at p. 563.) However, the court may look beyond the face of the petition and make credibility determinations adverse to the petitioner if the record contains facts refuting the allegations in the petition. (*Ibid.*)

To determine whether a petitioner has made a prima facie case for relief, the court may review the record of conviction, including the preliminary hearing transcript. (*Patton, supra*, 17 Cal.5th at p. 568.)  If the record shows the conviction was under a theory that remains valid, the petitioner has the burden to come "forward with nonconclusory allegations" creating a dispute as to the basis for the conviction.  (*Id.* at p. 567.)  For example, if the record shows the petitioner was convicted as

12

the direct perpetrator, a dispute may arise if the "petitioner points to specific facts that identify someone else as the direct perpetrator. . . . But absent specific facts, no such dispute arises . . . from mere latent, speculative possibilities; that is, a hypothetical alternate direct perpetrator cannot be conjured from thin air or a legal conclusion." (*Ibid*.)

If the court determines the petitioner has made a prima facie showing, it must issue an order to show cause and hold an evidentiary hearing to determine whether the petitioner is entitled to relief. (*Patton, supra*, 17 Cal.5th at p. 559.) The People have the burden at the hearing to prove the petitioner is guilty of murder under current law. (*Ibid*.; see *Strong, supra*, 13 Cal.5th at pp. 708–709.) If the court finds beyond a reasonable doubt the petitioner is guilty of murder under a still-valid theory, the petitioner is ineligible for relief under section 1172.6. (*Strong*, at pp. 708–709.) Otherwise, the petitioner is entitled to resentencing. (*Id*. at p. 709.)

We independently review whether a petitioner made a prima facie showing for relief under section 1172.6. (*People v. Ramos* (2024) 103 Cal.App.5th 460, 465.) We review a superior court's factual findings at an evidentiary hearing for substantial evidence. (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951.)

**2.** **Venancio failed to make a prima facie showing**

    a.     *Venancio was convicted under a provocative act murder theory*

On appeal, Venancio does not meaningfully contest that he was prosecuted and convicted under a provocative act theory of murder. However, in the superior court, he argued the evidence at the preliminary hearing implicated other theories of murder, including "the natural and probable consequences doctrine,

13

accomplice liability, [and] felony murder with transferred intent during the escape from a burglary." Venancio seems to have abandoned those arguments on appeal, and for good reason.[4] Contrary to his contentions below, neither felony murder nor the natural and probable consequences doctrine was a viable theory of murder based on the evidence presented at the preliminary hearing.

Where, as here, the defendant's accomplice died by gunfire, the theories of murder available to the prosecution depend on the identity of the shooter. Felony murder does not apply when the person who fired the fatal shots was trying to thwart the underlying felony. (See *People v. Washington* (1965) 62 Cal.2d 777, 781–782.) The same seems to be true of the natural and probable consequences doctrine. (See *People v. Mejia* (2012) 211 Cal.App.4th 586, 627 (*Mejia*) [defendants could not be convicted of murder under the natural and probable consequences doctrine based on a theory that they aided and abetted a nonprincipal in his justified use of lethal force]; *People v. Antick* (1975) 15 Cal.3d 79, 91 [defendant was not vicariously liable for the shooting death of his accomplice by a police officer].) However, those theories might be viable if both the shooter and the deceased are the defendant's accomplices. (See *People v. Billa* (2003) 31 Cal.4th 1064, 1070 ["felony-murder rule applies to the death of a cohort as much as to the death of an innocent person"]; *People v. Johnson* (1972) 28 Cal.App.3d 653, 656–658 [felony

---

[4]	Venancio instead argues provocative act murder— as it existed at the time of his conviction and when applied to nonprovocateur accomplices—is no longer a valid theory. We address that issue in the next section.

murder is "applicable where the person killed is an accomplice and not the robbery victim"].)

Here, the prosecutor could not rely on felony murder or the natural and probable consequences doctrine because the People could not prove one of Venancio's accomplices fired the bullets that killed Ruiz. At the preliminary hearing, neither party presented evidence of the shooter's identity. The prosecutor admitted to the court that, because the bullets traveled through Ruiz's body, the People could not prove who shot him. In fact, according to the prosecutor, the shooter's identity was a question "we won't be able to resolve." Thus, the People had to rely on a theory of murder that applied regardless of who fired the fatal shots.

Provocative act murder—and the general principles from which it arises—was a viable theory. (See *People v. Flores* (2023) 96 Cal.App.5th 1164, 1168, fn. 1 [provocative act murder "is the only murder theory available when someone other than the defendant or an accomplice kills during the commission or attempted commission of a crime"].) To be guilty of murder under a provocative act theory, the defendant must commit a provocative act—either directly or as an aider and abettor— that proximately causes a death. (See *Concha, supra*, 47 Cal.4th at pp. 660–662; *People v. Cervantes* (2001) 26 Cal.4th 860, 872, fn. 15 (*Cervantes*).) The defendant also must act with the requisite mental state, which often is implied from the nature of the provocative act.[5] (*Concha*, at pp. 660–662; *Cervantes*, at p. 872, fn. 15.) In a typical case, "the perpetrator of the

---

[5] We discuss in detail the mental state element of provocative act murder in the next section.

15

underlying crime instigates a gun battle, either by firing first or by otherwise engaging in severe, life-threatening, and usually gun-wielding conduct, and the police, or a victim of the underlying crime, responds with privileged lethal force by shooting back and killing the perpetrator's accomplice or an innocent bystander." (*Cervantes*, at p. 867.)

Provocative act murder is not an independent crime. (*Mejia, supra*, 211 Cal.App.4th at p. 612.) Instead, it is simply an application of the general rule that, when "the conduct of an intermediary is the actual cause of death, the defendant's liability will depend on whether it can be demonstrated that his own conduct *proximately caused* the victim's death—i.e., whether it can be shown that the intermediary's conduct was merely a dependent intervening cause of death, and not an independent superseding cause. If proximate causation is established, the defendant's level of culpability for the homicide in turn will vary in accordance with his criminal intent." (*Cervantes, supra*, 26 Cal.4th at p. 872, fn. 15.) In other words, the label "provocative act murder" is "merely shorthand used 'for that category of intervening-act causation cases in which, during commission of a crime, the intermediary (i.e., a police officer or crime victim) is provoked by the defendant's conduct into [a response that results] in someone's death.' " (*Concha, supra*, 47 Cal.4th at p. 663; see *Mejia,* at p. 612 [provocative act murder "is simply a type of murder where causation, though sufficient, is somewhat more attenuated than that which occurs when the defendant is the actual killer"].)

We see no reason why a provocative act murder theory— or at least the broader principles from which it arises—would not apply where the decedent is killed by friendly fire during a gun

16

battle caused by the defendant's provocative act.[6] As in a typical provocative act case, the defendant would be liable for murder only if his provocative conduct was the proximate cause of the death and he acted with the requisite mental state. The fact that the accomplice was killed by another accomplice might break the chain of causation in some cases, but it would not categorically absolve the defendant of liability for murder under such a theory.[7]

Applying those principles here, the People could have proved Venancio's guilt without having to prove the shooter's identity. The shooter's identity was not relevant to the mental state or provocative act elements. The only issue it might have affected was causation. However, to be a proximate cause, the " 'precise consequence [of a defendant's act] need not have been foreseen; it is enough that the defendant should have foreseen the possibility of some harm of the kind which might result from his act.' " (*Cervantes, supra*, 26 Cal.4th at p. 871.) In this case, it was enough for the People to prove it was foreseeable that Venancio's provocative conduct would cause a gun battle with

---

[6] In the superior court, Venancio argued in passing that provocative act murder would not apply if one of his accomplices fired the fatal shots. Venancio cited no authority for that assertion, and he seems to have abandoned the argument on appeal.

[7] We suspect prosecutors typically do not rely on a provocative act murder theory when an accomplice is the killer because there are other theories available that are easier to prove, such as felony murder. This case is unusual in that it is unknown whether the shooter was an accomplice or an innocent third party. Therefore, felony murder was not a viable theory.

17

an armed neighbor at which someone would be killed; the issue did not depend on whether Luis or an accomplice ultimately fired the fatal shots during that battle. Therefore, the People did not have to prove the shooter's identity to establish Venancio's guilt under a provocative act theory.[8]

In the superior court, Venancio argued the prosecutor's theory at the preliminary hearing was not conclusive because the People could have prosecuted him under a different theory at trial. While it is true the People were free to pursue other theories at trial, Venancio offers no factual grounds for doing so. As we discussed, to convict Venancio under a theory of felony murder or the natural and probable consequences doctrine, the People had to prove one of Venancio's accomplices was the shooter. Venancio points to no specific facts—in the record of conviction or elsewhere—from which the People could have proved the shooter's identity. Nor does he point to facts that would have supported a conviction under some other theory that is no longer valid. Absent such facts, Venancio's contention that he could have been convicted at trial under a theory other

---

[8] Venancio could still be liable even if a greater level of foreseeability were required. The chance that a participant in a gun battle would strike and kill a fellow accomplice is not so remote as to constitute an independent intervening cause. (See *Cervantes, supra*, 26 Cal.4th at pp. 871–872.) That is especially true of the gun battle in this case, which took place at night and involved at least four shooters, each firing from a separate location. Under these circumstances, if it were sufficiently foreseeable that Venancio's conduct would cause Luis to kill Ruiz, it also would be sufficiently foreseeable his conduct would cause an accomplice to kill Ruiz.

than provocative act murder is too speculative. As the Supreme Court recently explained, "mere latent, speculative possibilities" are not sufficient to raise factual disputes at the prima facie stage. (See *Patton, supra*, 17 Cal.5th at p. 567.)

The factual basis for Venancio's plea provides additional support for the conclusion that he was convicted under a provocative act theory. A factual basis for a plea must provide a prima facie showing of the offense. (See *People v. Holmes* (2004) 32 Cal.4th 432, 441.) At the plea hearing, defense counsel and the prosecutor stipulated to a factual basis for Venancio's plea "based upon the preliminary hearing transcript and police reports." Venancio does not contend the transcript or reports contain evidence identifying the shooter. Therefore, they would not have provided a factual basis for a plea under a felony murder or natural and probable consequences doctrine theory. Nor has Venancio suggested any other theory—apart from provocative act murder—for which the transcript and reports provide sufficient factual support. On this record, the only reasonable conclusion is that Venancio entered a plea and was convicted of murder under a provocative act theory.

In sum, the record of conviction shows Venancio was prosecuted and convicted under a provocative act murder theory. It is undisputed the prosecutor pursued that theory at the preliminary hearing, and Venancio stipulated to the transcript of the hearing as a factual basis for his plea. Venancio has not raised a sufficient factual dispute as to whether he could have been convicted under some other theory. The evidence at the preliminary hearing would not have supported a conviction under a theory of felony murder or the natural and probable consequences doctrine. Nor has Venancio pointed to any facts

19

that would have supported a conviction under some other theory that could potentially entitle him to relief. Accordingly, without having to weigh evidence or exercise discretion, we conclude Venancio was convicted under a provocative act murder theory.

      b.     *Post-*Concha *provocative act murder remains a valid theory*

Having determined Venancio was convicted under a provocative act murder theory, we now must determine whether that theory remains valid after the changes to sections 188 and 189. (See § 1172.6, subd. (a)(3).)

The California Supreme Court recently considered whether a petitioner convicted of provocative act murder in 1991 was categorically ineligible for relief under section 1172.6. In *People v. Antonelli* (2025) 17 Cal.5th 719 (*Antonelli*), the defendant and two accomplices committed a home invasion robbery. During the robbery, one of the defendant's accomplices assaulted and threatened to kill the robbery victims. In response, one of the victims shot and killed the other accomplice. (*Id.* at p. 723.)

In 1991, a jury convicted the defendant of first degree murder under a provocative act theory. (*Antonelli, supra*, 17 Cal.5th at p. 721.) Decades later, the defendant filed a petition for resentencing under section 1172.6, which the superior court summarily denied. (*Id.* at pp. 725–726.) The Court of Appeal affirmed, holding the defendant was categorically ineligible for relief because provocative act murder requires a finding that the defendant personally harbored malice. (*Id.* at p. 726.)

The California Supreme Court held the defendant was not categorically ineligible for relief. The high court explained its decision in *Concha, supra*, 47 Cal.4th 653, "clearly articulated that a defendant had to personally harbor malice to be convicted

20

of provocative act murder." (*Antonelli, supra*, 17 Cal.5th at p. 722.) However, the court's precedent before *Concha* "allowed for conviction for provocative act murder whereby malice could be imputed to a nonprovocateur accomplice solely based on his or her participation in a crime," which is no longer a valid theory of murder. (*Antonelli,* at p. 727.) The defendant was convicted in 1991, more than a decade and a half before *Concha*. Because the law at that time allowed the imputation of malice to a nonprovocateur defendant under a provocative act murder theory, the Supreme Court held the defendant was not categorically ineligible for section 1172.6 relief. (*Antonelli,* at pp. 726–727.)

As the Supreme Court explained in *Antonelli*, *Concha* marked a turning point in the law on provocative act murder. In *Concha,* "four men, Reyes Concha, Julio Hernandez, Max Sanchez, and an unidentified individual, attempted to rob Jimmy Lee Harris. During the attempted robbery, one of the assailants started to stab Harris, but Harris fought back with his own pocketknife and fatally wounded Sanchez. A jury convicted Concha and Hernandez of Sanchez's first degree murder under the provocative act murder doctrine." (*Antonelli, supra*, 17 Cal.5th at p. 730.) The Supreme Court granted review to determine whether a defendant may be liable for first degree murder when his accomplice is killed by the intended victim in the course of an attempted murder. (*Concha, supra*, 47 Cal.4th at p. 658.) In answering that question, the court discussed the elements of provocative act murder and held the "defendant or an accomplice must proximately cause an unlawful death, and the defendant must personally act with malice. Once liability for murder is established in a provocative act murder case or

21

in any other murder case, the degree of murder liability is determined by examining the defendant's personal mens rea and applying section 189." (*Id.* at p. 663.)

As we discussed, the record of conviction shows Venancio was convicted under a provocative act murder theory. Unlike the petitioner in *Antonelli*, Venancio was convicted after the Supreme Court decided *Concha*.[9] Thus, the theory under which he was convicted—post-*Concha* provocative act murder—remains valid. Therefore, Venancio is ineligible for relief under section 1172.6 as a matter of law, and he was not entitled to an evidentiary hearing. (See *Patton, supra*, 17 Cal.5th at p. 569 [a court may deny a section 1172.6 petition at the prima facie stage where the record of conviction forecloses the conclusion that the petitioner was convicted under a now-invalid murder theory].)

We reject Venancio's suggestion that *Concha*'s requirement of personal malice did not apply to him because he was a nonprovocateur accomplice. Contrary to Venancio's assertion, *Concha*'s holding is not limited to defendants who personally committed a provocative act that proximately caused a death. As the *Antonelli* court explained, *Concha* "directly addresses the relative mens rea requirements for multiple actors in a provocative act murder case" and concludes "a nonprovocateur accomplice must personally harbor malice to be liable for murder." (*Antonelli, supra*, 17 Cal.5th at pp. 729–730.)

Venancio's reliance on *People v. Johnson* (2013) 221 Cal.App.4th 623, is misplaced. In *Johnson*—decided six years after *Concha*—the Court of Appeal stated malice can be

---

[9]    The Supreme Court decided *Concha* in November 2009, and Venancio was convicted in April 2010.

22

"implied by law and imputed to the 'mastermind' [of an armed home-invasion robbery] despite his absence from the scene of the crime." (*Johnson*, at p. 627.) A different panel of the same court later remarked its choice of language in *Johnson* was " 'inartful,' " and was not meant to convey that provocative act murder does not require personal malice. (See *Antonelli*, *supra*, 17 Cal.5th at p. 730, fn. 6.) More recently, the Supreme Court expressly disapproved of *Johnson* as being inconsistent with *Concha*. (*Antonelli,* at p. 730, fn. 6.) In other words, according to the Supreme Court, *Johnson*'s statement concerning imputed malice does not reflect the state of the law at the time it was decided.

Venancio's reliance on the model jury instructions also is misplaced. As Venancio notes, at the time he was convicted, the model jury instructions on provocative act murder did not explicitly require a jury to find a nonprovocateur accomplice personally harbored malice. (See *Antonelli, supra*, 17 Cal.5th at p. 732, fn. 8 [referring CALCRIM No. 561 to the Judicial Council for revisions to ensure it does not permit a jury to impute malice to a nonprovocateur accomplice].) Venancio suggests the instructions are relevant because, in *Antonelli*, the Supreme Court stated " 'the [section 1172.6] eligibility question [generally] will turn on an examination of both the governing law at the time of trial and the record of conviction, including the jury instructions.' " (*Id*. at p. 731.) We do not read the Supreme Court's statement to mean courts must consider jury instructions in every case. Instead, it is clear the court meant only that jury instructions are relevant when assessing "petitions from

23

individuals convicted *following jury trials*."[10]  (*Ibid.*, italics added.)

Here, Venancio was convicted following a plea, without a jury trial.  Therefore, there are no jury instructions in the record of conviction for us to consult.  *Concha* was the governing law when Venancio was convicted, and *Concha* plainly prohibits the imputation of malice to a defendant under a provocative act theory, including to a nonprovocateur accomplice.  Accordingly, Venancio's conviction for provocative act murder necessarily establishes that he personally harbored malice, regardless of the content of the model jury instructions at the time.  Because that theory of murder is still valid, Venancio is ineligible for relief under section 1172.6 as a matter of law.

---

[10]  There is no merit to Venancio's suggestion that, if no jury instructions were given, it is impossible to determine whether the petitioner was convicted under a still-valid theory.  If that were true, the prima facie inquiry would not apply to petitioners convicted after pleas.  However, the Supreme Court has held the prima facie inquiry applies to those petitioners.  (See *Patton, supra*, 17 Cal.5th 549.)  Thus, the absence of jury instructions in this case does not preclude a finding that Venancio is ineligible for relief at the prima facie stage.

## DISPOSITION

We affirm the order.

## CERTIFIED FOR PUBLICATION

EGERTON, Acting P. J.

We concur:

ADAMS, J.

HANASONO, J.